## HUIDEKOPER v. BUCHANAN COUNTY.

See Case No. 14,679.

---

## Case No. 6,848.

### HUIDEKOPER v. BURRUS.

[1 Wash. C. C. 109.] [1]

Circuit Court, D. Pennsylvania. April Term, 1804.

EJECTMENT — EVIDENCE OF TITLE — LAND WARRANTS—LAW AND PRACTICE IN PENNSYLVANIA—SURVEY — LOCATION OF WARRANTS — SETTLEMENT.

1. A patent for land is only prima facie evidence of title; but if the previous steps for vesting a title be not performed, proof of such omission will defeat the same.

2. Although the law of Pennsylvania permits only one warrant to issue to one person, the universal practice of the state, upon which land titles rest, has been different; and one person may take out any number of warrants, in the names of different persons; who are considered as merely nominal; and trustees for the person who pays for the warrants, and their execution.

[Cited in Herron v. Dater, 120 U. S. 472, 7 Sup. Ct. 624.]

3. The practice in Pennsylvania has been, where one person takes out a number of warrants to cover a large tract of land, to describe particularly, in the leading warrant, the tract it is intended to cover; and the other warrants are generally made out as adjoining this, and each other.

4. The uncertainty of the description in the adjoining warrants, is supplied by the survey; and if this act be performed, before any adverse title to the land accrues in a third person, the uncertainty of the warrant forms no objection.

5. Aliter, if in the meantime another person obtains a special warrant and survey, or settles the tract. thus uncertainly described; for in this case, the subsequent survey of the first warrant holder, would not relate back to the date of the warrant, so as to overreach the intermediate title thus acquired.

6. If the outlines of a large tract of land be legally surveyed; no third person has a right to impeach the internal structure; or to object, that any one of the warrants, within the outlines, was not properly surveyed.

---

1 [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States. under the supervision of Richard Peters, Jr., Esq.]

7. If a warrant be located on one tract, and it is afterwards lifted, and located on another tract, to which no person has in the meantime acquired a title; this is valid to vest a title in the first locator, to the tract to which the warrant is removed. Aliter, if an intermediate title has been acquired.

8. The nature of a proviso, in a statute.

[Cited in Ryan v. Haeseler. 161 Pa. St. 93. 28 Atl. 1014; County Com'rs v. State (Fla.) 4 South. 797.]

9. To make a survey complete, the lines ought to be run and marked on the ground, where necessary; and if not done, the surveyor may afterwards go on the ground to complete the same. Quere. Whether the not running and marking the lines on the ground, invalidates the survey.

10. The proviso in the act of 1792 [3 Smith's Laws Pa. p. 73] only dispenses with the forfeiture incurred, according to the law, by not making the settlement, and continuing it, within and during the time prescribed by the enacting clause; and requires that it must be made as soon as the prevention ceases.

[Cited in Phillips v. Wilson, Case No. 11,109.]
[Cited in State v. County Com'rs of Duval Co. (Fla.) 3 South. 194.]

11. The prevention to settle upon lands in "the new purchase," continued until the end of the year 1795; and after that time, a reasonable time should be allowed to those who claimed titles to lands within the same, for preparing to make settlements.

12. A warrant and survey of lands within "the new purchase," without a compliance with the terms thereof, enjoining a settlement of the land, would not be sufficient to maintain an ejectment.

[Cited in Murphy v. Packer, 152 U. S. 398, 14 Sup. Ct. 636.]

This ejectment was brought [by the lessee of Huidekoper] to recover four hundred acres of land, situated on Lake Erie; in the triangle conveyed by the United States to the state of Pennsylvania, in March, 1792. Under the act of April, 1792, passed by that state. authorizing the sale and settlement of this tract of country, three hundred and ninety warrants, of 400 acres each, were taken out by a company under the name of "The Population Company;" who, in the fall of 1792, delivered those warrants to the surveyor, to be laid upon the lands within the triangle; and accordingly, in the spring of 1794, the warrants were surveyed, by running lines, by actual survey, from north to south, quite from the point of the triangle, eastward to the New-York line. These lines being protracted, the east and west lines were laid down, not by actual survey, but separating the different tracts on the plat by the intersections of the east and west lines. The surveyor returned this connected survey to the proper office; but finding that he had omitted to lay off the state reserve of two thousand acres, he was directed by the surveyor general to lift the warrants laid upon the land: but finding that this could not be done without altering most of the lines as laid down by the first survey, he went upon the land, and made a new and actual survey, in 1795, marking all the lines and corners of the different tracts. The war-

rant, which was laid upon the land in question in 1795, was in the name of William Smith, druggist; and was laid, in 1794, upon a tract some distance from that on which it was laid in 1795. The first warrant, which was in the name of Mary Nicolson, was particularly described on all its sides; and the other three hundred and eighty-nine warrants were adjoining; and adjoining each other. The survey of 1795 being returned, a certificate, called a prevention certificate, was granted in the name of William Smith, druggist, (as well as in all the other cases;) stating that he had been prevented from settling by force of arms of the enemies of the United States, and that he and his assigns have persisted in their endeavours to make such settlement. This was granted in September 1798, in pursuance of a regulation of the board of property; which prescribed this form of certificate, and that patents should issue, where the surveyor and two justices should certify those facts. Certificates having been obtained as directed by the above regulations, patents issued to the managers of the Population Company, for all the lands laid off within the triangle, (except the reserved lands,) on the 6th of March 1799. The defendant, Burrus, claims by settlement under the commonwealth; and adversely to the Population Company.

The points made by the plaintiff's counsel, were—

First. That the patent is conclusive as to the title of the plaintiff, against a tortious entry and settlement by the defendant.

Secondly. That if the regularity or validity of the previous steps can now be inquired into, the plaintiffs were entitled to their patent; because, though no settlement was made under the enacting part of the 9th section of the act of April, 1792; yet, the Population Company were prevented, first, by the danger of doing so during the Indian war, and the hostilities committed in this country during that period; and afterwards, by the opposition of certain intruders, (amongst which the defendant was one,) who associated themselves together in large bodies, drove away settlers placed there by the company, and deterred others from coming; and lastly, because the defendant, in 1795, with his associates, agreed, with the agent of the company, to take certain tracts under the company, (in which the present was included,) upon certain terms agreed upon; that the defendant entered, in 1796, by virtue of this agreement, and afterwards disclaimed to hold under the company, and held in opposition to them. In the construction of the 9th section of the act of April, 1792, it was urged, that persistance for two years was sufficient, under the proviso, to save the forfeiture; or, if not so, if continued for five years, it was sufficient. In either case, the plaintiff's right was preserved, as the company, after the war, persisted in making their settlements, but were prevented.

The plaintiff's right to recover, was resisted upon the following objections:

1st. That the 390 warrants were all taken out by the Population Company, though in the names of different persons; whereas the law does not contemplate any one person obtaining a warrant for more than one tract.

2d. The warrant in 1794, was surveyed on a different tract of land from that now in dispute; and, therefore, the surveyor, having executed his authority, could not resurvey, in 1795: and it is under this last survey, that the land in question was located. The survey of 1794 was merely upon paper; and the act of assembly of April, 1785, declares that the surveyor shall go upon the ground, and mark all the lines and corners.

3d. The condition of settlement is precedent to the vesting of the estate, and the plaintiff cannot recover until he has made a settlement under the proviso in the 9th section. If not a condition precedent, it is a limitation to any settler upon failure of the warrant holder to make the settlement, and no entry of the commonwealth is necessary. 2 Bl. Comm. 155; Harg. Co. Litt. 214b.

4th. The plaintiff was bound, as soon as the impediment which prevented his settling was removed, to settle and improve, and reside for the time mentioned in the law. This was the opinion of the judges in the issue directed to be tried at Sunbury. Chief Justice Shippen, contra.

5th. The warrant is not sufficiently descriptive, within the words and meaning of the law.

Much testimony was produced, which is noticed, generally, in the charge.

Mr. Ingersoll, Mr. Lewis, Ed. Tilghman, and Mr. Dallas, for plaintiff.

Wm. Tilghman, M. Levy, and Mr. Foster, for defendant.

WASHINGTON, Circuit Justice. The first point to be considered, is whether a patent is conclusive evidence of the plaintiff's title; because, if that be the case, there is no necessity for considering the other points. A patent for land in this country, is the act of a public officer, who acts under a special authority delegated to him by law; and which prescribes the terms upon which it is to be granted. If it is to be granted upon a settlement and improvement, or upon a warrant properly surveyed and located, with settlement, &c.; the patent is prima facie evidence that every thing is regular; and every thing is to be presumed in its favour, until proof is exhibited to the contrary. If it appear that there was no incipient right by settlement, or warrant and survey with settlement, as the law directs, then the patent does not vest a title. The warrant and survey give an incipi-

ent title, to be consummated by settlement and residence, of which title the patent is but the evidence.

2d. The objection to the granting more warrants than one, to one person, is without foundation in the expressions of the law; is opposed, by the practice of the state, without interruption, so that the introduction of such a doctrine, at this day, would be mischievous in the extreme. The person whose name appears on the warrant, is considered as merely a nominal grantee; and a trustee for the person who pays for the warrant, and has it executed.

3d. The uncertainty of the warrant. This objection, too, is answered by the uniform practice of the state. Wherever one person takes out many warrants, he borrows the names of certain persons, no matter who they are; one of the warrants is special, and describes, on its face, the boundaries of it; the next warrant is said to be adjoining the descriptive warrant; the next adjoining this, &c. The survey locates them precisely; and if, when this act is performed, there is no adverse claim to the lands thus surveyed, the uncertainty of the warrant can never afterwards be made an objection; because it had been rendered certain by the survey, before such claims existed. But, if between the warrant and survey, another person obtains a special warrant for one of the tracts, thus uncertainly described; or, if he has, in the meantime, surveyed or settled such tract, a future location and survey of such tract, would not relate back to the date of the warrant, so as to overreach the title acquired in the meantime. But, if the uncertainty of the warrant were an objection in common cases, nothing but the positive injunctions of law, could make it a substantial one in this case; because, to have required a particular description of each tract, would have been to require an impossibility; for, to do this, there must have been a survey of each tract, which, at the time those warrants issued, could not have been made in the part of the country, where these lands lie.

4th. Another objection, much relied upon, was, that the authority of the surveyor to lay this warrant, was executed in 1794, and could not be again executed in 1795. The warrant was functus officio by the first survey, and could not afterwards be lifted, and laid on the land now in dispute. And yet the survey of 1794 was called a paper survey, and the act of assembly, requiring an actual running and marking of the lines and corners was read. Now, it seems to me, that the defendant's counsel are in a plain dilemma. If the survey of 1794 be a paper survey, and void by the law, because the lines were not actually run and marked on the ground, then the warrant was not executed as the law directs, was not functus officio, and might be surveyed in a proper manner in 1795. If the survey of 1794 was legal and complete, then the plaintiff need not rely upon the latter survey

at all; because, since the whole of the triangle was surveyed upon regular warrants, and had vested in the Population Company an incipient right to the whole, they must, of necessity, have an incipient right to all the parts of that whole; and a third person coming in afterwards, either tortiously, or by contract with the company, can never impeach their title, by saying that the warrant laid in one place in 1794, could not, in 1795, be removed to another spot. What has he to do with the internal structure of a plat of land, whose outward lines enclose land located by and belonging to the company? If a warrant be located on one tract, and afterwards another person acquires title, by settlement, or warrant and survey, to another tract, the warrant first located cannot be lifted, and laid upon such other tract; but if it be done before any other has acquired a title to it, it cannot be said that a person claiming by posterior title has been injured. But at any rate, the survey of 1794 was incomplete; because the lines were not run and marked on the ground; and though I do not say that such a survey would be void, yet certainly the surveyor might go on to complete and correct the first survey, at a subsequent day.

5th. The important question now remains to be considered, and that is, whether the plaintiff is entitled to recover upon the first construction of the act of 1792? The plaintiff's counsel contend, that the proviso to the 9th section of this law substitutes a persistance in endeavours to make a settlement, for an actual settlement; whereas the defendant's counsel say, that the proviso does no more than dispense with the forfeiture, incurred by not making the actual settlement, and continuing it within and during the time prescribed by the enacting clause; but still, that it must be made as soon as the prevention ceases. I must confess, that my mind strongly inclines to the latter construction: I do not think it necessary for me to go into this part of the subject, because, if persistance is made a substitute for settlement, I shall endeavour to prove, that this settlement means improvement, and five years residence; and if so, it is still incumbent on the plaintiff to show that he persisted for that time, in his endeavours to make and continue his settlement. But, as I never expect to hear this point better argued than it has been, or to have a better opportunity of considering it; I think it best to give an opinion upon it, that the parties may either regulate themselves in respect of the other ejectments, or may take an exception, and have the point settled in the supreme court.

I prefer the construction given by the counsel for the defendant, because it is more consistent with the acknowledged spirit of the law, which was to encourage the population and improvement of this country; and it is liable to fewer difficulties, when applied to the various cases, that may be supposed as occurring under the law. By this construc-

tion, settlement and improvement are obtained instead of endeavours; and a precise criterion, as to the degree and continuance of those endeavours, is afforded by the law itself, instead of being left to fancy and conjecture. If it be asked, how long is the warrant holder, (after a prevention has taken place,) to persist in his endeavours to make a settlement, the answer is afforded by the law itself, "until such actual settlement is made;" for to that object are the exertions to be applied. If it be asked, how such actual settlement is to be made? it is again answered, by the enacting clause of this section,—by making certain improvements, and residing thereon for five years next following the first settlement. If, on the other hand, these questions be put to those who support a contrary construction, they answer—First. That the persistance, if it continue two years, is a performance of the condition. This, I think, cannot be supported; for he is to persist in his endeavours to make such actual settlement as aforesaid, which I take to mean residence as well as improvement; because the ninth section has declared what an actual settlement is, and that it consists in clearing and cultivating two acres in every hundred, building a house, and residing thereon five years, &c. Now, if any thing short of actual settlement will do, and if persistance is substituted by the proviso for the thing required by the enacting clause to be done, the persistance should surely be commensurate with the thing for which it is a substitute, or there is no rule whatever by which the length of persistance can be measured. That actual settlement means residence, as well as improvement, is obvious from this consideration; that if a man had made all the required improvements, before he had been driven away, but had not resided five years, he would be exposed to the full operation of the enacting clause, and subject to the forfeiture, without being saved by the proviso; which only applies to a person persisting in endeavours to make such improvements, (if this is the meaning of actual settlement,) which is absurd as to one who has already made them. Besides, the Indian war was existing at the time this law passed; it was hardly to be supposed it would terminate very shortly; and if a two years persistance was deemed equivalent to actual improvements, which it was so improbable could be made in that time, it was substituting a thing merely imaginary, for what the legislature deemed substantially beneficial. But if the time were extended to five years, it was much more likely that persistance, during some part of that time, might be employed, to effectuate the great objects of the law. But if persistance for two years will not satisfy the proviso, it is contended, that it is sufficient if it continue for five years. This is certainly less objectionable than the former; but when the one or the other is contended for, do not those who argue in this

way rely upon conjectures, instead of the more permanent rule afforded by the law itself? And after all, what part of the proviso is it, which authorizes us to say, that the persistance is to continue for two or five years? It declares that the persistance shall be, to make such actual settlement; or in other words, to make such improvements, and to reside thereon for five years; and therefore, the persistance must continue until those things are done. Suppose the prevention should continue four years, and that that time should be taken to be in part satisfaction of the five years, as extended for; from what period will you date the commencement of the five years, so as to know when it is run out? Would it be sufficient to go upon the land, after the prevention has ceased, and reside the remaining one year? Certainly not; because the five years residence is to commence from the first settlement; and if this be not the period of its commencement, I know not in what way I am to say that any other will answer. The law fixes upon no other; and I certainly act at least upon safe ground, when I take the rule which the law has furnished. It therefore seems to me essential, that where no settlement had been made prior to the prevention, the warrant holder must make his settlement in a reasonable time after the prevention ceases, and from that time, continue his residence for five years. If this be not the case, it will be impossible to say, whether the five years are to run from the date of the warrant, from the period of prevention, or from any intervening period.

Persistance, must mean something real; not merely the wishing, or even attempting to do, an act impossible, or so dangerous that no man could be expected to attempt it. If the enemy, who should drive away the settler or warrant holder, should, during the period of two or five years, continue to infest the country, it could never be necessary for them to prove exertions during all that time to settle; because, to require the making them, when they could not be effectual, would be ridiculous. A warrant holder, therefore, who, from 1792 to 1795, should never have made an attempt to settle in this country of constant danger, would have had just as much merit, in my opinion, as another, who had hovered on the borders, sometimes going on, then flying from the enemy, and so on. The truth is, the legislature neither intended nor expected, that attempts, during a war carried on in this country, were to be made for settling. Persistance to settle, when that can be effected, I understand; but if required during a time when you are excused for abandoning your settlement, and if this kind of persistance is to be considered as a substitute for actual settlement, it is giving up the substance for the shadow. A proviso is generally intended to except a particular case, out of a gen-

eral principle; where, from peculiar circumstances attending the supposed case, there would be a hardship if the exception were not made. To understand the proviso, it is always the safest way to discover the mischief or hardship to be removed, and it should be so construed as to afford the remedy. The legislature can seldom intend to carry the remedy farther. Now, in this case, danger from the enemy might prevent the making the improvements and residence within and during the time prescribed, but not the making them at another time, when no such impediment existed. But forfeiture incurred, upon the failure to make the improvements within two years, and to continue the residence for five. This would have been a hardship, when you were prevented by enemies of the United States; and therefore, to remedy this hardship, the forfeiture is saved, if the party persisted, or goes on to make his actual settlement, although he has not done it within the period before prescribed. The proviso does not substitute persistance for settlement, but dispenses with a strict performance of the condition, provided it is performed within a reasonable time; for this is the best and only evidence of "a persistance in his endeavours to make such actual settlement."

The next questions are, was the Population Company prevented from settling, from the cause mentioned in the law, how long did it continue, and have they persisted? Many witnesses have given evidence as to the state of this country during the war, in which we find as great a diversity of opinion, as to the danger of settling there, as there is in the strength of nerves which string different frames. Some think there was not much danger, although they admit many murders were perpetrated, by the hostile Indians, in different parts of this country; and although the lives of those very witnesses were spent in successive advances and retreats, as the danger diminished or increased. Some of them have gone so far as to say, that, in their opinions, the hostilities committed, did not proceed from a national, general war, carried on against this country, but from a spirit of depredation and plunder, conducted by small parties. If these witnesses mean, that regular embodied armies did not march into the country, their testimony of this fact is denied by no person. But, they are greatly mistaken in supposing, the war was not national; and, whether quite as dangerous, when carried on by small invading bodies against a few straggling settlers, is matter of opinion, and certainly of very little consequence. If one man, or many, were daring enough to brave the dangers resulting from the operations of a savage enemy, thus conducted; it is no reason why other men should have been as imprudent; or, if you please, as courageous. The rights of the individuals are not to be measured by the masculine

texture of their nerves. It is enough, that, from 1792 to 1795, inclusive, there was a national war subsisting between many of the Indian tribes and the United States; and, though the great scene of action was considerably to the westward of this country, yet it extended itself to the whole of it, and was supported by a force always equal to the occasion. Many families were cut off; and few could venture to leave the forts at so great a distance, as to lose the benefit of the asylum they afforded. The communications from the governor of this state to the legislature; the laws passed at various periods, during the three years I am now considering, for affording protection to that country; the history of that period, as recorded in our own memories; all prove, that settlements were not to be made, without extreme danger, until about the end of 1795. Until the end, then, of 1795, we must consider the prevention, by the enemies of the United States, as continuing; and, although during a great part of it, the company made exertions to settle the country, their rights would have been as perfectly secured, if they had not made a single attempt. After the restoration of peace and safety, a reasonable time should be allowed the company, for preparing to make their settlements; of which the jury are to judge, upon the circumstances of the case. But, it is insisted, by the defendant, that the improvements were not made within the time prescribed; nor has there been any residence at all upon the tract in question. To this, the plaintiff answers: that, the Population Company were prevented from doing either, by the conduct of the defendant himself. First, by his entering upon the land under a contract with them: secondly, by his retaining the possession of it, and so preventing them from putting thereon some one else, who would have made them; and, thirdly, by bodies of associated intruders, (amongst which the defendant was one,) who prevented settlers from coming, by the lawless opposition and outrages, which they, at different times, committed. If the jury should be of opinion, that the evidence is with the plaintiff, upon all, or any of these points, they must find for the plaintiff; for it shall not, in such cases, lie in the mouth of the defendant to avail himself of a forfeiture, which he has himself produced. As to the contract, it is clearly proved; and it is as clear, that the defendant, early in 1796, entered on the land in virtue of that agreement. Whether, in the summer of that year, or in 1797, he disclaimed the title of the Population Company, is uncertain from the evidence; nor is it material: because, as he had gained the possession, and always after retained it, in opposition to the company, the only remedy for them to regain it was, by an ejectment, to recover that right of possession, which their warrant and survey vested in them; for I will here observe, that though

such a settlement, as is mentioned in the ninth section, is necessary for the vesting and consummation of the right of a warrant holder, yet, they have such an inceptive title, under the warrant, as will enable them to maintain a possessory action against a tortious possessor; for this was essential to enable them to perform the condition. So, although no proof is given to fix upon the defendant any specific act of violence; and, although the mere circumstance of his being associated with a company of intruders, would not make him a principal in the trespasses they committed, unless he was present; yet, if a settlement of this tract was prevented by this society, it would be highly unjust to permit the defendant to avail himself of the defence, now set up, under such circumstances.

The jury found a verdict for plaintiff.

[A motion in arrest of judgment was made by the defendant. Case No. 6,849. For similar cases, see Huidekoper v. Douglass, Case No. 6,851, and Huidekoper v. McClean, Id. 6,-852.]