## MURPHY *v.* PACKER.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF PENNSYLVANIA.

No. 107. Argued January 16, 17, 1894. — Decided March 19, 1894.

Evidence of the payment of the purchase money due to the State of Pennsylvania on a land warrant, clothes the person paying it with the ownership of the warrant, and with the right to maintain ejectment for the land.

A recital in a patent from Pennsylvania to B of a conveyance by A to B before the warrant issued, is no evidence against persons claiming under C to whom a previous patent had issued for the same land upon the warrant to A.

When county commissioners in Pennsylvania buy in for the county land sold for nonpayment of taxes, and the land, while owned by the county, is illegally assessed for taxes, and sold for nonpayment of them, and conveyance is duly made to the purchaser, who remains in possession forty years, the county is estopped from asserting title in itself.

When a valid title to real estate in Pennsylvania becomes vested in a person by reason of the ownership of a land warrant and his payment of the purchase money to the State, a stranger to his title, claiming under another and distinct title, cannot avail himself of the act of April 22, 1856, Purdon's Digest, 1064, 11th ed., with regard to implied or resulting trusts.

EJECTMENT. The case is stated in the opinion.

*Mr. A. Ricketts* for plaintiff in error.

*Mr. James Ryon* for defendant in error. *Mr. John W. Ryon* and *Mr. S. P. Wolverton* were with him on the brief.

Mr. Justice Shiras delivered the opinion of the court.

This was an action of ejectment brought, in the Circuit Court of the United States for the Western District of Pennsylvania, by Elisha A. Packer, a citizen of the State of New York, against Charles G. Murphy, a citizen of the State of Pennsylvania, to recover possession of a tract of land containing four hundred and sixty-two acres, situate in the county of Cumberland and State of Pennsylvania. The plaintiff's evidence to show title in himself consisted of six warrants for tracts of land of some four hundred acres each, one of which, to Nathaniel Brown, dated November 26, 1793, embraced the land in question; also survey under said warrant made on the 21st day of October, 1794; also, papers on file in the land office of Pennsylvania, namely, a purchaser voucher No. 12,969, and a "purchase blotter" No. 12,969, dated June 14, 1794, stating that Dr. Thomas Ruston applied for and took out the warrant to Nathaniel Brown and five other warrants, and paid the purchase money.

Under the well-settled law of Pennsylvania this evidence of payment of the purchase money by Dr. Ruston availed to clothe him with the ownership of the warrants and with a right to maintain ejectment. *Campbell* v. *Galbraith*, 1 Watts, 70, 78; *Ross* v. *Barker*, 5 Watts, 391; *Sims* v. *Irvine*, 3 Dall. 425; *Evans* v. *Patterson*, 4 Wall. 224; *Huidekoper* v. *Burrus*, 1 Wash. C. C. 109, 114. With the ownership of the land embraced in the Nathaniel Brown warrant and survey thus in Dr. Ruston, the plaintiff put in evidence the record of a suit against said Ruston at No. 44, April session, of the Circuit Court of the United States for the Eastern District of Pennsylvania, showing a judgment obtained on October 13, 1796, sale of said tract of land, and conveyance by the United States marshal on October 11, 1803, to Nicholas Le Fevre. This was followed by proof of the will of Nicholas Le Fevre and of proceedings thereunder, in the orphans' court of Philadelphia and Columbia Counties, whereby the title of Le Fevre to the Nathaniel Brown tract became vested in one Joseph Probst on May 9, 1837. By various deeds, wills, and sheriff's sales

put in evidence, but which need not be set forth here, the Nathaniel Brown tract became finally vested, on March 20, 1883, in Elisha A. Packer, the plaintiff below. The plaintiff likewise put in evidence showing that the Nathaniel Brown tract had been sold for unpaid taxes by the treasurer of Northumberland County on June 13, 1840, and conveyed to Charles Pleasants on August 16, 1840; and also, for unpaid taxes, had been sold and conveyed by the treasurer of Columbia County to James Pleasants by deed dated August 17, 1842. These tax titles to Charles and James Pleasants were shown to have become vested, before the bringing of this suit, in the plaintiff below.

These various documents and proceedings on which the plaintiff relied as showing title in himself were particularly set forth, in accordance with a rule of the Circuit Court pertaining to trials of ejectment, in a statement or brief of title. This statement was not formally controverted by the defendant below, who filed a statement of his own title, which was substantially as follows: (1) the warrant to Nathaniel Brown, November 26, 1793; return of survey of the same, October 21, 1794, this being identical with plaintiff's title; (2) a patent for the Nathaniel Brown tract, dated April 13, 1797, to one Peter Grahl, reciting a conveyance by Nathaniel Brown to Grahl, dated November 27, 1793; (3) assessments of Nathaniel Brown tract, as unseated lands, for unpaid taxes for the years 1826 and 1827; (4) sale for unpaid taxes and conveyance by the treasurer of Columbia County, on June 2, 1828, to the commissioners of said county; (5) minutes of commissioners of Columbia County of unseated lands, showing sale to said commissioners in 1828 and sale made by said commissioners of said tract to Charles G. Murphy, the defendant, by deed, acknowledging the receipt of $305, dated September 18, 1882.

At the trial the plaintiff, as above stated, sustained his brief or statement of title by putting in evidence the warrant, survey, and subsequent deeds, documents and proceedings vesting in him the title to the Nathaniel Brown tract. So far as we are advised by the record the defendant did not object to the plaintiff's evidence, but proceeded to offer evidence to

sustain the history of his own title contained in his brief or statement of title. The offers of the defendant were rejected by the court below, and a peremptory charge was given to the jury to find a verdict for the plaintiff, which was done, and a judgment was entered in favor of the plaintiff, to which the writ of error in this case was sued out.

Error is alleged in the action of the court in refusing to admit the defendant's offers of evidence, and in instructing the jury that the plaintiff was entitled to a verdict.

The first offer of the defendant below was a patent from the Commonwealth of Pennsylvania to Peter Grahl, dated April 13, 1797, with recital therein of a conveyance by Nathaniel Brown to Peter Grahl, dated 27th November, 1793, more than six months before the warrant issued or was paid for. The defendant did not offer any such conveyance in evidence, but relied upon the recital in the patent. Such recital was not evidence against Dr. Ruston and those claiming under him. In the case of *Herron* v. *Duter*, 120 U. S. 464, which was an action in ejectment for the land embraced in one of the other warrants owned by Dr. Ruston, and called the Lewis Walker, in the Circuit Court of the United States for the Eastern District of Pennsylvania, the court below rejected a precisely similar offer, namely, a patent to Peter Grahl, with a recital therein of a conveyance by Lewis Walker to Peter Grahl, and such action of the court below was, on error, approved by this court. It was held, following the doctrine of the Pennsylvania cases, that a legal title in Dr. Ruston had been established by the warrant, survey, and payment of the purchase money, and that it was not competent for the Commonwealth of Pennsylvania to affect that title by a subsequent patent to a stranger. To the same effect are *Maclay* v. *Work*, 5 Binn. 154; *Woods* v. *Wilson*, 37 Penn. St. 379.

We, therefore, think that the court below was right, in the present case, in rejecting the defendant's first offer.

The next assignment of error is founded upon the refusal of the court to admit the defendant's offer of the sale book of the commissioners of Columbia County, showing sale of

Nathaniel Brown tract, August 31, 1882, to C. G. Murphy, the defendant, together with a deed of said commissioners to said Murphy, dated and acknowledged September 18, 1882. The plaintiff objected to this offer as irrelevant and incompetent to affect the plaintiff, because the defendant offered no evidence to show title in the county commissioners of Columbia County but a tax title or sale in 1828, and that whatever title was acquired at such sale in 1828 was divested by the tax sale to Pleasants in 1842, and because at the sale in 1882 the presumption had become conclusive that the taxes of 1826, 1827, and 1828 had been paid, and the land redeemed from the sale of 1828.

This action of the court below was justified by the ruling of the Supreme Court of Pennsylvania, in the case of the *Diamond Coal Company* v. *Fisher*, 19 Penn. St. 267, where the very question presented to us in this assignment of error was considered, and it was held that the county was estopped from asserting title in itself under a tax sale, when the commissioners had bought in the land, as against a purchaser from the county treasurer, notwithstanding that the directions of the act of 1815, which prescribes the duties of the commissioners in reference to the holding and disposal of the lands sold to them, were disregarded.

The learned counsel for the plaintiff in error challenges the soundness of the decision of the Supreme Court of Pennsylvania in the case of *Diamond Coal Company* v. *Fisher*, and cites the case of *Herron* v. *Murphy*, 22 Weekly Notes of Cases, 181, to the contrary, as overruling the former case.

If, indeed, the decision in the case of *Herron* v. *Murphy* must be read as contended for by the plaintiff in error, we might be constrained thereby to sustain this assignment of error. But our examination of that case does not satisfy us that the case of *Diamond Coal Company* v. *Fisher* was thereby overruled. The case of *Herron* v. *Murphy* does not appear in the regular reports of the decisions of the Supreme Court of Pennsylvania, and from this we are, perhaps, permitted to infer that the court did not consider the case of sufficient importance to be reported, which could scarcely have been the

case if it was intended to thereby overrule *Diamond Coal Company* v. *Fisher*, which appears in the official reports. Moreover, in *Herron* v. *Murphy* the case of *Diamond Coal Company* v. *Fisher* is not noticed or referred to, nor any other case, and the principal questions considered by the court were whether the acknowledgment of a deed by a county treasurer after his term of office had expired was invalid, and the admissibility in evidence of the minute book of the commissioners' office. The defendant's evidence in the case appears to have been ruled out because their abstract of title had not given notice of the treasurer's sale. However this may be, we are unable to accept the contention of the plaintiff in error that it was the intention of the Supreme Court of Pennsylvania, in the case of *Herron* v. *Murphy*, to overrule the doctrine announced in *Diamond Coal Company* v. *Fisher*.

The course of the court below, in the present case, in rejecting evidence to show a commissioners' sale nearly sixty years after the sale to them in 1828, without any evidence of claim during this time upon the part of the county to the land, is also sought to be sustained by the contention that, by this long lapse of time, the presumption had become conclusive that the taxes for 1826, 1827, and 1828, for which the lands were sold to the commissioners in 1828, had been paid, and the lands redeemed from the sale of 1828. To sustain this contention the case of *Woodburn* v. *The Farmers' Bank*, 5 W. & S. 447, 450, is cited, in which it was intimated, if not directly held, that a presumption of payment would arise from lapse of time against the lien of county taxes. We are not, however, called upon to adopt this view of the case, because we think the ruling in *Diamond Coal Co.* v. *Fisher* sufficiently disposes of the second assignment of error.

Another assignment of error is based on the refusal of the court below to admit defendant's offer of a subsequent treasurer's sale in 1846. The evidence to sustain this offer was the treasurer's sale book for 1846, but on inspection the entry in that book does not show any sale to any one else, but does show that on November 19, 1847, the taxes on the Nathaniel Brown tract were paid by James Pleasants, and the land re-

deemed.   It is, indeed, claimed by the plaintiff in error that the entry of payment and redemption by James Pleasants was irregular and unauthorized.   But the defendant seems to have made no offer to show that the entry was unwarranted and illegal, and we think, in the absence of evidence, it is a fair presumption, after so long a period, that an entry of this kind in the book of the treasurer was properly made.   Nor can we accept the claim that such entry, even if admissible to show payment of taxes, does not show a redemption by James Pleasants; for the entry itself, as shown by the copy thereof in the brief of the plaintiff in error, discloses that the payment of the taxes was entered under a heading in the words, "By whom redeemed and when."   Such an entry and heading contained in a county treasurer's book might well be regarded, after so long a period, as an admission of such facts to affect the county, and might properly have been offered as such on the part of the plaintiff below.   At any rate, and this is all that concerns us now, no injury was suffered by the defendant below in the court's rejection of his offer.

The effect of this alleged tax sale of 1846 is again raised in the sixth prayer for instructions on behalf of the defendant, asking the court to charge the jury that if the land, after the sale to James Pleasants in 1842, was again sold to the commissioners by the treasurer in 1846, such sale divested the title of Pleasants, and that his subsequent payment of the taxes for which the land was sold would not operate to reinvest him with the title.   The answer to this is that the redemption act of 1815 (Purdon's Digest, 11th ed. 1682, pl. 52) provides that upon the redemption the commissioners shall reconvey all the county's title to the owner, and it has been held that the entry of "redemption" in the tax books is received as evidence of the fact, and that the redemption is good and revests the title without a deed from the commissioners. *City of Philadelphia* v. *Miller*, 49 Penn. St. 440, 456.   However, as the defendant's evidence was not before the jury, this and the other prayers for instructions, so far as they were based on the defendant's rejected evidence, are not before us for consideration.

But it is contended that even if Dr. Ruston did pay the purchase money for the Nathaniel Brown tract, such payment merely inured to the benefit of Ruston by way of a resulting trust, and that the act of assembly of April 22, 1856, (Purd. Dig. 11th ed. 1064,) forbids the assertion of any implied or resulting trust after the lapse of five years, unless such trust shall have been acknowledged in writing by the party to be charged therewith.

It is difficult to see how this statute affects the present controversy. If, indeed, Nathaniel Brown, in whose name the warrant had issued, had taken hostile possession of the tract, and excluded Dr. Ruston, the beneficial owner, and if at that time the act of 1856 had been in force, such a question might have arisen. But as we have seen that, under the well-settled law of Pennsylvania, a legal title became vested in Ruston by his ownership of the warrant and his payment of the purchase money, and as his title has, by instruments in writing and by proceedings of record, become vested in the defendant in error, a stranger to that title, claiming under another and distinct title, originating in a commissioners' sale in 1882, cannot avail himself of the statute referred to.

Finding no error in the rulings of the court below, its judgment is

*Affirmed.*

MR. JUSTICE WHITE, not having been a member of the court when this case was argued, took no part in its decision.