Argued June 4; remanded June 17, 1947

## GLEN CULLEN REALTY COMPANY, INC. *v.* MULTNOMAH COUNTY
### (182 P. (2d) 366)

In Banc.

*James R. Greenfield* and *Arthur E. Prag,* of Portland, (Hoy and Prag, of Portland, on brief) for appellant.

*Manche I. Langley,* Deputy District Attorney, of Portland, (with John B. McCourt, District Attorney, of Portland, on brief) for respondent.

KELLY, J.

This is a suit for specific performance for an alleged contract for the sale by defendant Multnomah County, to plaintiff, of certain real property acquired by said defendant county by means of foreclosure of delinquent tax liens thereon. From a decree for defendant, plaintiff appeals.

The corporate capacity of plaintiff under the laws of Oregon and the capacity of defendant, as a political subdivision of the State of Oregon, namely, a county, are alleged in paragraph 1 of plaintiff's complaint and admitted in defendant's answer.

Paragraph 2 of plaintiff's complaint is as follows:

"That on March 29, 1944, defendant offered to sell to the plaintiff the following described real property located in Multnomah County:

Tract R of Tax Lot 29, of Section 17, Township 1 South of Range 1 East of the Willamette Meridian, except that portion known as 'Parcel C', for the sum of $1813.72, with no interest to be payable on the unpaid balance, which said offer was in writing and which offer was accepted by the defendant in writing on the 29th day of March, 1944, at which said time $100.00 was paid in cash."

The complaint also contains an allegation that plaintiff paid the sum of $564.00 at one time and the sum of $110.00 at another time, leaving a balance of $1039.72.

In the complaint also are further allegations, that during the month of July, 1945, plaintiff tendered to defendant $1,039.72 in full payment of the above described contract; that subsequently plaintiff again tendered to defendant said last sum; that plaintiff tenders into court said sum; and that defendant has refused and still refuses to accept the same and also refuses to issue a deed to plaintiff.

In its complaint, plaintiff also alleged that during all of the times mentioned therein plaintiff has been in possession of the above described property, and relying upon the contract upon which substantial payments have been made, plaintiff improved the property, clearing the ground, building roads, bridges, etc., and has expended the sum of $441.75.

In its answer, defendant denies each and every allegation contained in plaintiff's complaint except paragraph 1 thereof.

In support of plaintiff's allegation, that on March 29, 1944, defendant offered in writing to sell to plaintiff the real property in controversy, plaintiff calls attention to plaintiff's exhibit 4, which is a purported carbon copy of a letter addressed to Mr. F. V. W. Andrews, Land Agent for Multnomah County, c/o Court House, Portland, Oregon, signed by J. R. Greenfield, secretary of plaintiff. In this record, there is no offer in writing by defendant to sell to plaintiff the property in controversy.

■ According to the testimony in behalf of plaintiff, the purported agreement, upon which plaintiff's case depends, was made by Mr. Andrews, the land agent of Multnomah County. Mr. Andrews had no authority to make such agreement. Such authority is vested in the

county court or board of county commissioners to be exercised at a meeting thereof for the transaction of county business. Section 86-143, O. C. L. A. Vol. 6, p. 57 et al.

In plaintiff's closing oral argument on appeal, the doctrine of estoppel was invoked; but, in order to apply the doctrine of estoppel, there must be a pleading of facts justifying its application. Here plaintiff merely pleads that defendant made an offer in writing that plaintiff accepted in writing. Neither the written offer so alleged, nor the written acceptance, has been produced.

■ If defendant ought not to be permitted to allege or prove that Mr. Andrews had no authority to make an offer to sell property belonging to defendant, or, if defendant ought not to be allowed to deny that any valid contract of sale was executed, the facts should be pleaded that disclose the reason why defendant should be so estopped. Instead of such pleading, the complaint in effect alleges the execution of a contract in writing by means of a written offer of defendant and a written acceptance thereof by plaintiff.

Exhibit No. 6 of the record consists of four checks drawn by Mr. Greenfield, secretary of plaintiff, in favor of the following named payees for the following sums respectively, viz: U. Ernest Nelson, $75.00; Bert L. Smith, $150.00; A. J. Ewert, $69.00; and A. Krzmarzick, $77.75; a statement of account in favor of U. Ernest Nelson against plaintiff in the sum of $75.00 marked "Paid 8-18-44"; and a "Partial Statement of Labor & Material Expended during 1944 on T. L. 29

Glen Cullen, For Betterments by Glen Cullen Realty Co.'' the items therein being as follows:

"1944

Aug. 18, U. G. Nelson, Surveying 43rd Ave. and Boundary Lines TL 29 .......................................... $ 75.00

'' 21 B. L. Smith, Clearing & Grading, 43rd Ave. Ext. Glen Cullen ........................................ 150.00

'' 25 A. J. Ewert, Clearing 42 Ave. Thru TL 29 Glen Cullen & Grading same ......................... 69.00

'' 21 A. Krzmarzick Ax-man clearing & Grading 43 Ave. Extension, G. C. ......................... 77.75

'' 31 Miscellaneous Labor & Material & Helper 42 & 43 Ave. TL 29 G. C. Cash .................. 70.00

$441.75''

This partial statement is signed J. R. Greenfield and immediately to the left and above his signature are the words ''see cancelled checks annexed''.

As to the alleged improvement of the property, clearing the ground, building roads, bridges, surveying, etc., the oral testimony, with reference thereto, presents a glaring example of the ''here and there'' system of testifying.

To illustrate the unintelligible character of the ''here and there'' method of testifying, we quote from Mr. Greenfield's testimony:

'' * * * The work we did was to have the tract surveyed by U. G. Nelson a very prominent surveyor in this city, and he surveyed this tract and established corners at these - - - we had to start with a corner here; then we went north to that corner and

established that corner, and this one, and came down here and established that corner, and this one, and came down here and established that corner, and over to the boundary line, running that down to the end of the tract here. The north boundary line of this row of lots which had been foreclosed, we didn't bother to survey that, but we did survey this line across here, and then again south to the point of beginning (indicating on the board)."

"Q. Would you point out the rebuilding of the bridge? * * *

"A. Point out what?

"Q. The rebuilding of the bridge. Where was that?

"A. As I explained, here is the creek that crosses this roadway here that we paid Mr. Andrews $110 for and then rededicated it to the city. (Witness indicates on the board.)
* * *

"Q. The bridge is here (indicating), is that it?
"A. Well, it is somewhere along that road."

On cross-examination, it was developed that plaintiff re-purchased tract R and wanted to know where the boundary lines were so that it could properly sell that tract to Mr. Frye in the beginning.

Mr. Greenfield testified that, "the original object was to survey the entire tract," but plaintiff had the application for Mr. Frye and asked him (Mr. Nelson) to put the stakes on the four corners of that while he was doing other survey work.

As to the improvement on the road and the bridge that was built, witness was asked: "That road is here, isn't it, and the bridge across the stream is right here (indicating)?"

"A. Well, the stream runs out here (indicating). Yes, it was on this road that we built into the property.

"Q. The road to the bridge that you improved and spent some money on is here (indicating), isn't it?

"A. Well, it is farther north; it is up here, close to this tract (indicating).

"Q. But it doesn't touch this tract (indicating)?

"A. Oh, yes it does; it comes right across here (indicating).

"Q. The bridge?

"A. No; the bridge is located about 100 feet from the end of the street and that road bends at this point and comes across here (indicating)."

The foregoing excerpts from the testimony indicate that at the trial in the circuit court, use was made of a blackboard upon which was drawn a map of the property in controversy and the abutting property. Neither this map nor a copy or photograph thereof is in the record before us. Without it, it is impossible to determine, with any assurance of accuracy, where the alleged improvements were located or what bearing they had upon the alleged contract.

Three deeds from defendant to plaintiff, conveying three separate parcels of property, were received in evidence. There is no allegation in plaintiff's complaint upon which the terms of these deeds could be varied or reformed. While there is some oral testimony of alleged statements by the county's land agent, Mr. Andrews, which would tend to vary the terms thereof, as stated, Mr. Andrews was without any authority with respect thereto, unless given such authority by the board of county commissioners, and there is no oral testimony of any such action on the part of said board.

While the oral testimony actually given is in substance as above stated, the record before us contains a copy of an amended answer filed in case No. 163,352

in the circuit court of the State of Oregon for Multno-
mah County, the same being a suit to quiet title wherein
defendant herein, Multnomah County, was plaintiff,
and plaintiff herein, Glen Cullen Realty Co., Inc., was
defendant. By stipulation, this document was received
in evidence in the instant case as the deposition of
Joshua T. Colvin. No objection was interposed to any
part of it. It is known to this record as plaintiff
Exhibit No. 7.

In this amended answer, the capacity of Multnomah
County as a political subdivision of the state, and the
corporate capacity of plaintiff herein as an Oregon
corporation are alleged. This answer contains three
further and separate answers.

Paragraphs IV, V and VI of the first further and
separate answer; paragraphs V, VI, VII, VIII and IX
of the second further and separate answer and para-
graphs V, VI and VII of the third further and separate
answer contain statements of fact, that disclose that
plaintiff herein was the owner of a 12-acre tract of
land of which the premises in suit are a part; that
Multnomah County foreclosed delinquent tax liens
upon said 12-acre tract; that petitions, dated December
15, 1943, March 29, 1944 and June 15, 1944, were pre-
sented by plaintiff herein to defendant county and that
defendant county, through its official representative
and agent in charge of the land department, Mr. F. V.
W. Andrews, *by and with the express consent and di-
rection of the board of county commissioners of de-
fendant county* did make and allow certain considera-
tions and concessions to plaintiff herein for the repur-
chase of said tracts by plaintiff including said 12-acre
tract of which the premises in suit are a part; and that
certain definite prices, terms and conditions were mu-
tually agreed upon by and between plaintiff and de-

fendant, and said prices, terms and conditions were prepared, itemized, reduced to writing and delivered to plaintiff herein; accepted by plaintiff, acted upon by the repurchase of several of said foreclosed tracts; and payment therefor was acknowledged by defendant county by the execution of deeds for same by defendant county.

It is also stated in plaintiff's Exhibit No. 7, that on or about the 29th day of March, 1944, after the repurchase of several tracts of plaintiff's foreclosed properties had been negotiated and consummated between plaintiff and defendant, a revised schedule of prices on tract R, of which the premises in suit are a part, was prepared by defendant county and submitted to plaintiff herein from which it was determined that plaintiff's repurchase price on said 12-acre tract, designated as Tract R or Tax Lot 29, would be $1513.72. The statement is further made in said plaintiff's Exhibit No. 7, that to this last named price plaintiff consented and agreed to add $300 to cover added costs, interest, etc., for installment payments, covering a period of one year, making a total of $1813.72, on which amount the sum of $100 was paid by plaintiff as earnest money.

It also appears from said Exhibit No. 7, that on June 12, 1944, a sale of a 2-acre tract from said 12 acres was negotiated by plaintiff, at which time defendant, through its said land agent, advised plaintiff that a change in the terms of payment on said balance of $1713.72 had been determined upon by defendant county and that upon this and subsequent repurchases by plaintiff from said tract R, plaintiff would be required to pay defendant a minimum of $230.00 per acre on each sale, to be applied on said balance of $1713.72 plus interest at 6 per cent on the unpaid balance to the date

of each subsequent sale, in consideration of which defendant would rescind the time limit of one year for total payment as proposed by plaintiff originally.

Reference is also made in Exhibit No. 7 to two additional repurchases by plaintiff subsequent to said final adjustment of terms and prices, which two repurchases aggregated approximately three acres at an aggregate price of $674.00, which sum was paid to defendant leaving a balance due on said 12-acre tract of $1039.72 as of June 12, 1944.

It is further stated in said Exhibit No. 7, that during the succeeding months of the year 1944, several other cash payments were made to defendant on repurchase prices of divers tracts in plaintiff's foreclosed properties of 1941, based on the said prices, terms and conditions prescribed by defendant's said land department as heretofore more fully set out and described herein on page 4, line 20 to 25, inclusive, in acknowledgment of which individual deeds were executed by defendant and countersigned, not only by the land department, but also by the county commissioners, the county clerk and district attorney of Multnomah County, and their deputies; and that the said arrangement and plans of defendant for the repurchase of their foreclosed properties, as disclosed by these many instances, were well known to, fully approved by, all the department officials of Multnomah County.

The further statement is made therein that in pursuance of defendant's said representations, written agreements, schedules of repurchase prices, terms and conditions submitted to plaintiff from time to time for the repurchase of said foreclosed property, and particularly the said 12-acre tract R, as hereinbefore more fully set out and described; and believing said representations to be honest and sincere, and relying

thereon, plaintiff set forth in full faith and confidence and launched an extensive program of improvements and developments on said tract to render it more accessable and salable; that during the succeeding year immediately thereafter, plaintiff expended the sum of $441.75 for resurveying said tract, building roads, streets and bridges and clearing a portion of the land as part of said improvement program, which expenditure, together with the anticipated profits therefrom of approximately $5,000, would be a total loss to plaintiff, unless defendant is required to keep and perform the said obligations and agreements by it to be kept and performed.

That plaintiff has faithfully kept and performed each and every obligation, fully and promptly, by him to be kept and performed, and has fully complied with all the terms and conditions prescribed by defendant from time to time, and is prepared to continue to do so.

The defendant county introduced no testimony and hence the statements of Mr. Colvin, as contained in Exhibit No. 7, are not contradicted.

As we construe these statements, they reflect a course of dealing involving future sales at agreed prices by parcels to plaintiff by defendant of the whole of the original tax lot 29, being a 12-acre tract in Section 17, Township 1, South of Range 1 East of the Willamette Meridian in Multnomah County, a continual compliance by plaintiff with the terms of that arrangement, the payment of money pursuant thereto upon the purchase price of the premises in suit, and the expenditure of money in improvements of the property involved by plaintiff in reliance upon said understanding; and the retention by defendant county of money paid upon the purchase price of the premises in controversy.

■ From this record, it appears that defendant county, in negotiating with plaintiff as above outlined, was not acting in its governmental capacity. Under appropriate pleading, the doctrine of estoppel could be invoked by plaintiff even though defendant is a political division of the state, namely, a county. *Moran v. Miami County,* 2 Black (U. S.) 722, 17 L. Ed. 342; *Mercer County v. Hackett,* 1 Wall. (U. S.) 83, 17 L. Ed. 548; *Calhoun County v. American Emigrant Co.,* 93 U. S. 124, 23 L. Ed. 826; *County of Randolph v. Port,* 93 U. S. 502, 23 L. Ed. 957; *County of Leavenworth v. Barnes,* 94 U. S. 70, 24 L. Ed. 63; *Murphy v. Packer,* 152 U. S. 398, 38 L. Ed. 489, 14 Sup. Ct. Rep. 636.

No application by plaintiff herein was made for leave to file an amended complaint to conform to the facts elicited by said Exhibit No. 7, and hence the learned trial judge was then and this court is now guided and controlled by the allegations of plaintiff's original complaint. As stated, these allegations have not been proved.

We find no reversible error in the course taken by the trial court; but, because of the absence of the map and the method of eliciting the oral testimony, there is so much of the record that is unintelligible; and because no contradiction or refutation has been made of the statements of Mr. Colvin appearing in said Exhibit No. 7, as above stated, we think that this case should be remanded to the circuit court in order that plaintiff may apply to said court for permission to file an amended complaint, and for such other and further proceedings as are not inconsistent herewith. Nothing herein is intended to challenge or restrict the discretion of the trial court. It is ordered that this cause be remanded and defendant herein be awarded costs on this appeal.