Argued December 3, 1958, reversed and remanded May 20, 1959

# COUNTY OF LINCOLN v. FISCHER ET AL
### 339 P. 2d 1084

*William F. Lubersky,* Portland, argued the cause for appellant Spaulding Pulp & Paper Company. With him on the brief were Koerner, Young, McColloch & Dezendorf, Paul D. Hanlon, and Phillips, Coughlin, Buell & Phillips, Portland.

*David P. Templeton,* Portland, argued the cause for the respondent. With him on the brief were A. R. McMullen, Newport, and Humphreys, Jones & Templeton, Portland.

Before PERRY,* Chief Justice, ROSSMAN, McALLISTER** and O'CONNELL, Justices.

ROSSMAN, J.

This is an appeal by Spaulding Pulp and Paper Company, one of the three defendants, from the decree which the circuit court entered in this suit which

---

\* Chief Justice when case was argued.
\*\* Chief Justice when this decision was rendered.

was instituted January 7, 1955, by the plaintiff, County of Lincoln, to quiet its title to the quarter section of land described in the complaint. The challenged decree awarded the requested relief. The asserted cloud consists of a contract that the plaintiff and one of the defendants, H. L. Fischer, signed on February 8, 1944. The third defendant is the wife of H. L. Fischer. Hereafter, when we use the name of Fischer we will refer to H. L. Fischer. The contract provided for the sale of the quarter section by the plaintiff to Fischer for a price of $500, $110 of which was paid at the time of the execution of the contract and the balance was payable in ten annual installments of $39. None of the installment payments were made. June 21, 1945, the defendant Spaulding Pulp and Paper Company, to which we will hereafter refer as Spaulding, purchased Fischer's interest in the contract. In its answer Spaulding, which in 1952 had tendered to the county the entire balance of the unpaid purchase price, made counter claim for specific performance of the contract. The challenged decree quieted title in the county and rejected Spaulding's plea for specific performance. Spaulding alone has appealed.

The contract between the county and Fischer contained a time of the essence clause and gave the county option to declare the contract forfeited. Nothing other than the down payment of $110 was paid on the contract; but April 9, 1952, Spaulding, upon discovering that no installment payment had been made, tendered to the county the full amount due and to become due on the contract including interest. The tender ($581.56) was refused by the county on the ground that its amount constituted insufficient consideration. Prior to that time, and up to and including June 30, 1954, Spaulding had paid in full all taxes assessed by the

county against the property. While some of the early tax statements were addressed to Fischer, those sent in the later period were addressed to Spaulding and its checks in payment thereof were accepted.

March 25, 1947, the Lincoln County court issued an order which purported to cancel the contract, but the order was not called to the attention of Spaulding until October 26, 1954, and service of the order was not attempted in the manner provided by ORS 275.220 which says:

"(1) In case of breach of condition or other default in performance of any contract made pursuant to ORS 275.180 or 275.200, the county court may, by order made and entered in its records, declare such breach or default and cancel such contract or enter into a new agreement in writing. If the contract is canceled, a certified copy of the order shall be served as a summons is served by the sheriff upon the holder of such canceled contract if he is found within the county, and if he is not so found, then by mailing it to him by registered mail at his last known address. * * *

"(2) Within 20 days after the service of the order of cancelation upon him, the holder of the canceled contract may appeal from such order to the circuit court * * *."

Lincoln County had acquired title to the quarter section December 17, 1929, by a tax foreclosure proceeding. The circuit court held that the notice given by the county did not effect a cancellation.

Spaulding claims that the county court's order of March 25, 1947, by which the county attempted to cancel the contract was void. We have mentioned the fact that a copy of the order was not delivered to Spaulding until October 26, 1954. Spaulding urges

that the contract was never canceled and that the plaintiff's suit is an attempt to effect a forfeiture.

The brief of Spaulding, as appellant, submits five propositions accompanied by supporting arguments. Their essence is that the county never canceled the contract and that Spaulding is entitled to its specific performance. The county argues that it canceled the contract. It also argues that equity will deny specific performance to a purchaser (1) when the contract has been in default for seven years, (2) when the contract contains a time of the essence provision and (3) when the market value of the property has greatly increased in the period of default.

The contract involving the land in suit was not an isolated transaction; to the contrary, the quarter section comprised only one parcel of many which Fischer bought from the county in 1943 and 1944. Similarly, it was only one of many which Fischer sold to Spaulding. At the time of the county's sale to Fischer one-third of the property in the county was off the tax rolls. The county during those years accepted payments from Fischer on his various contracts when he possessed sufficient funds whether the payments were timely made or not. Nowhere in the evidence is there an intimation that the provision requiring the installment payments to be made on a designated day was strictly enforced. Although Fischer stated on direct examination by the defendant that he was aware that he had not completed his payments on "the contract," he apparently referred thereby to the fact that when he later left Oregon he still owed a balance of several hundred dollars on all of his contracts. He testified on cross examination by the plaintiff that he was under the impression that he had made installment payments on this particular contract.

Since the exact balance due on all of the contracts does not appear but was limited by Fischer's testimony to several hundred dollars, it seems that he had fully discharged many of the contracts before the final payment dates which were sometime in 1953 or 1954 and that he was not bound to discharge all of them before those dates.

At the time of the execution of the contracts the county desired to sell the many properties which it had acquired through tax foreclosure proceedings and thereby return them to the tax rolls. Since purchasers were hard to find, the county was willing to sell this quarter section for $500 although it is now worth $50,000 or possibly more. The county had been unable to find a purchaser for the quarter section for $1,000 only the year before the defendant purchased it. The trial judge found that the contract was reasonable at the time it was made. The plaintiff does not challenge the finding. The trial judge also found that the contract was not properly canceled by the county.

Although Fischer bought the land for speculative purposes he did not do so by means of an option. He entered into a binding bilateral contract with the county which bound him to pay the purchase price. Fischer's delays in payment both on this contract and the others were not the result of speculative motives. That is, he was not waiting to see if the value of the land increased before he paid, but rather he waited until he could get the needed cash through selling properties to buyers such as Spaulding.

The foregoing is a brief statement of the facts. We are now confronted with the question as to whether the county effectively canceled the contract before Spaulding in 1952 made tender of the full purchase

price. We think that the contract was fair in its terms when it was made.

After the circuit court had concluded that the contract had not been canceled it found that Spaulding was not entitled to specific performance, because Spaulding's conduct did "not square with any principles of good sound business." Thus, the court felt that neither party could ask its aid to enforce the terms of the contract and decided to leave them where they were "at the time of the execution of the original contract." On that basis the trial court declared that the county was the sole owner of the property and granted to it the relief which it sought. It ordered the county to return the tax payments to Spaulding, but no mention was made of a return of the down payment. We do not believe that the court's action did no more than return the county to its former status. Since it quieted the county's title it thereby improved the county's condition materially.

■ In effect, the challenged decree recognizes in a court of equity power to enforce a forfeiture without giving the vendee opportunity to make his default good. *Epplett v. Empire Investment Company,* 99 Or 533, 194 P 461, 194 P 700, holds that where a land contract contains provisions that time is of the essence and that the vendor has an option to declare a forfeiture, a declaration of a forfeiture which was made without notice is a breach of the contract by the vendor which entitles the vendee to rescind. The court phrased the rule as follows:

"* * * The right to declare a forfeiture can, when arising out of contracts like the one presented here, be exercised either at or after the maturity of any installment; but, whether exercised at or after maturity, the right does not exist and cannot

be lawfully exercised unless reasonable notice has been previously given. * * * the right to forfeit cannot be fully exercised unless: (1) the vendor gives reasonable notice; and (2) the purchaser fails to pay within the time fixed by the notice. * * *"

In *Feehely v. Rogers,* 159 Or 361, 76 P2d 287, 80 P2d 717, the plaintiff, vendee in a land contract with Hood River County, brought an ejectment action against a later vendee from the county. Although time was not made of the essence, the contract contained an optional forfeiture provision similar to the one in this case. The original vendee (plaintiff) had defaulted in his payments whereupon the county without notice to him canceled his contract and entered into an agreement with the defendant which bound the latter to purchase the property. As against contentions that the county acted in a governmental capacity and could not change the statute which allowed an automatic forfeiture this court ruled that contracts made by the county in this capacity were to be interpreted the same as contracts made by individuals and that by adding the optional forfeiture provision the county "relinquished the right to an automatic forfeiture which the statute might otherwise have rendered available and submitted itself to the duty to give notice before declaring a forfeiture." The decision held that the plaintiff was entitled to prevail in the ejectment action.

■ By this suit to quiet title without first effecting a forfeiture as the contract required it to do the county asks a court of equity to deem the defendant's rights in the contract forfeited. Possibly this suit might be considered to be a request for strict foreclosure. *Grider v. Turnbow,* 162 Or 622, 94 P2d 285, was concerned with the course of action taken by a vendor which can justify the vendee in declaring a mutual rescission. In

that case this court considered the difference between forfeiture and foreclosure. In holding that strict foreclosure recognizes the contract as subsisting, the court pointed out that if time is of the essence and if the contract contains an optional forfeiture provision the vendor can not declare a forfeiture without reasonable notice even if the vendor has not waived strict performance. As stated by the decision:

"The clause in the contract providing that time shall be of the essence thereof is for the benefit of the vendor, and it may be waived by him. The waiver may be effected by the acceptance of payments past due without insisting upon punctuality. When once waived, the provision for forfeiture is of no avail to the vendor unless he first gives to the purchaser reasonable notice of his intention in the future to insist upon strict performance on his part of the terms of the contract. This rule of law is so well established that no citation of authority is necessary to support it.

"The courts have placed so much emphasis on the necessity of rehabilitating the time-essence clause, when once waived, before a forfeiture may be declared, that the impression is created that a vendor, before declaring a forfeiture, need not give the vendee notice of his intention so to do unless there has been a waiver. Such is not the case. * * *""

In so holding, the court quoted with approval from *Flanagan Estate v. Great Central Land Company*, 45 Or 335, 77 P 485, that:

"* * * While it [equity] might refuse in many instances to interfere for the relief of an obligor against forfeiture for breach of an obligation, it will never interpose to declare a forfeiture, that being a matter, if insisted upon, entirely for the law side of the court. * * *"

*Higinbotham v. Frock,* 48 Or 129, 83 P 536, pointed out that:

> "* * * An application for a strict foreclosure is always addressed to the sound discretion of the court, and when enforced at all will not be done without giving the defendant a reasonable time to comply with his contract * * *."

*Zumstein v. Stockton,* 199 Or 633, 264 P2d 455, held that notice must be given whether or not the time of essence provision was waived. *Davis v. Wood,* 200 Or 602, 268 P2d 371, was a similar holding with respect to personal property. The leading case of *O'Connor v. Hughes,* 35 Minn 446, 29 NW 152, held that a mere default is not enough to terminate the purchaser's rights and that the vendor must elect in order to enforce strict compliance. *Petersen v. Ridenour,* 135 Cal App2d 720, 287 P2d 848, held that an action to quiet title which was brought to terminate a land contract is essentially a strict foreclosure action. *Holland v. Bradley,* 140 Or 258, 12 P2d 1100, is an example of a properly declared optional forfeiture. It is noted in 11 Tex L R 137. Ballantine, in 5 Minn L R 329, analyzes the difference between enforcing a forfeiture and giving relief from an accomplished forfeiture. He declares:

> "* * * Although the law will not assist in the vivesection of the victim, it will often permit the creditor to keep his pound of flesh if he can carve it for himself."

Even if the county's conduct could be deemed insufficient to constitute a waiver of the time of essence provision, the fact remains that the county never foreclosed the contract. This suit must be deemed one to forfeit the contract in a manner not provided for

by its terms. The county, upon its own showing, was not entitled to the relief which it received.

The county argues that specific performance should not be granted to Spaulding and that therefore the court has no alternative but to quiet the county's title. That argument ignores the middle ground, that of leaving the parties to their remedies at law. The two cases relied upon by the plaintiff for its "either-or" proposition do not support it. *Williams v. Barbee,* 165 Or 260, 106 P2d 1033, refused to give specific performance to the vendee and quieted title in the vendor but the latter had given the notice required by the contract and therefore had effectively canceled it before the suit to quiet title was brought. In that case the only purpose of the suit was to remove from the records the already canceled contract. Similarly, in *Johnson v. Norton,* 152 Neb 714, 42 NW2d 622, the court quieted title in the vendor and refused specific performance to the vendee but the contract contained an automatic forfeiture provision and a default by the vendee (who even at the time of the trial could not show that he could pay the purchase price) had caused the provision to take effect before suit was brought. Comments in 32 Mich L R 518 declare that most courts take a middle ground between rescission and specific performance. If forced to make a choice, the middle ground would have its attractions for us.

The major argument of the county is that Spaulding is not entitled to specific performance of the contract because of delay and an increase in the value of the land. The trial court embraced that view. It is our duty to examine the facts of the case and then determine whether the circuit court's holding constituted a proper exercise of discretion. To do so we

are faced with the situation stated in the following language in *Tucker v. Beam,* 343 Ill App 290, 98 NE2d 871:

"There is probably no branch of contract law in such a state of confusion as that concerning the rights at law of a defaulting purchaser under a contract for a deed. Although the factual situations differ widely, it remains extremely difficult to state any general principle to be deduced from the case. \* \* \*"

■ Spaulding, as Fischer's assignee, is, in general, in the shoes of Fischer and is not entitled to specific performance if Fischer would not be. *Merchant Land Company v. Barbour,* 65 Or 235, 130 P 976, 132 P 710. See also collation of cases 138 ALR 205. The application of the principle just mentioned is complicated by the fact that although Fischer was the one who was bound to make the payments, Spaulding for many years was treated by the county as owner and thus we have to make the transition of viewing Spaulding as a purchaser who inadvertently did not make the installment payments on the land contract although it concurrently paid taxes to the vendor and thereby asserted rights of ownership. This is not a case where an assignment was made unbeknown to a vendor whose dealings were exclusively with the assignor. Fischer testified that he would have paid what was due if the default had been mentioned to him. His statement was not controverted and is borne out by the immediate tender on behalf of Fischer and Spaulding when they became aware of the fact that there had been a default in payment. Neither do we think that there can be any characterization of the failure to pay as other than inadvertent since the course of dealings led Fischer to believe that prompt performance would

not be required and led Spaulding to believe that payment had been made. The default was not willful in the sense that Fischer was waiting to see if it would be to his advantage to complete performance before he actually did so.

■■ It is settled in this state that a county is subject to the same treatment that would be given to a private party in transactions of this kind, including defenses of estoppel and the like. *Glen Cullen Realty Company v. Multnomah County,* 181 Or 394, 182 P2d 366; *Feehely v. Rogers,* supra. The essential nature of a land contract is stated in *Walker v. Mackey,* 197 Or 197, 251 P2d 118, 253, P2d 280, as follows:

> "* * * the vendee, under an executory contract of sale of land, is deemed to be the equitable owner of the property, and the vendor holds legal title to it in trust for the vendee as security for the unpaid balance. * * *"

■ It is, of course, clear that the grant of specific performance is a matter of "discretion," but the implications of the term "discretion" are not equally clear. Discretion has a wider meaning in cases that do not deal with land. In the latter the inadequacy of the legal remedy is a feature in determining whether or not equity will use its extraordinary power. However, as phrased in Clark, Equity, § 42:

> "Though originally all equitable relief was given as a matter of grace, specific performance of contracts for the sale and purchase of interests in land has come to be such a usual remedy that it may now be said to be a matter of right, provided the contract is not unconscionable in its terms and there is no misapprehension, surprise, mistake or the exercise of any undue advantage."

Pomeroy's Specific Performance of Contracts, 3rd edition, § 35, contains the following:

"* * * Even where a contract belongs to a class susceptible of enforcement, the right to its specific performance is not absolute, like the right to recover the legal judgment. The granting this equitable remedy is a matter of discretion; not, indeed, of an arbitrary, capricious discretion, synonymous with the mere pleasure of the judge; but of a sound, judicial discretion, controlled by established principles of equity, and exercised upon a consideration of all the circumstances of each particular case. Where, however, the agreement is in writing, is certain in its terms, is fair and just in all its provisions, is for a valuable consideration and is capable of being enforced without hardship to either party, it is as much a matter of course for a court of equity to decree its specific performance, as for a court of law to award a judgment of damages upon its breach. * * *"

Section 46 of the textbook just cited, in criticizing the use of the word "discretion," states:

"* * * The language which describes the remedy of specific performance as depending upon an exercise of discretion—even of judicial discretion—unless taken with certain limitations and interpreted in a particular manner, is misleading; it is a misconception which represents the granting of this relief as in any sense a matter of grace, or depending upon the favor of the court. Courts of equity do not sit, any more than courts of law, to distribute favors or acts of grace to their suitors; their judicial function consists in the protection of rights and the enforcement of duties by means of the remedies which they administer. * * *"

Restatement of the Law, Contracts, § 359, Comment a, elucidates the meaning of the term "discretion" as follows:

"The exercise of sound judicial discretion is

something other than decision by arbitrary whim or by emotional desire or as a personal favor. There are working rules that are to be applied * * * But at almost every step in the application of these rules, the court must determine the existence of many facts and must weigh their relative importance as parts of an inter-related whole. How great is the degree of uncertainty in amount of harm? Are the ·terms of a contract unfair, oppressive, or unconscionable? Is the hardship of enforcement disproportionate to the need for enforcement? * * * The solution of questions like these requires judicial experience and knowledge of life; and the process is described as the exercise of sound judicial discretion."

■ *Wagner v. Savage*, 195 Or 128, 244, P2d 161, which considered the specific performance of an oral contract to transfer property in consideration of personal services, seems to lean toward the "grace" idea; it was there said:

"* * * specific performance of a contract is not a matter of right in equity, but is more a matter of grace, and rests in the sound discretion of the court, controlled by equitable principles. * * *"

In the light of other Oregon cases it seems clear that the words just quoted were a way of indicating that the relief of specific performance is not absolute. To speak of its award as "a matter of grace" is incorrect. In *Temple Enterprises, Inc. v. Combs*, 164 Or 133, 100 P2d 613, 128 ALR 856, the plaintiff asked for specific performance of a lease; this court there said:

"A fundamental rule of this branch of equity jurisprudence is that whenever a contract concerning real property is, in its nature and incidence entirely unobjectionable—that is, when it possesses none of those features which appeal to the discretion of the court—it is as much a matter of

course for a court of equity to decree a specific performance of it as it is for a court of law to give damages for the breach of it. * * *"

In response to the argument that specific performance would be inequitable, that decision went on to say:

"* * * it must be remembered that the discretion of a court of equity in cases of this character is judicial in its nature and the relief is not 'of grace'; that, within the domain of equity, judicial remedies are not in any true sense discretionary but are governed by the established principles and rules which constitute the body of equity jurisprudence. * * *"

We deem that statement a correct portrayal of the governing rule. See also *Hawkins v. Doe,* 60 Or 437, 119 P 754; *Public Market Co. v. City of Portland,* 160 Or 155, 83 P2d 440; *Percy v. Miller,* 197 Or 230, 251 P2d 463; *Gorder & Son v. Pankonin,* 83 Neb 204, 119 NW 449.

*O'Fallon v. Kennerly,* 45 Mo 124, denied specific performance because the purchaser under a unilateral contract had not tendered the money or proved an alleged act of waiver. In so doing the court stated:

"There is no doubt that equity may decree a specific performance of a contract for sale of property, notwithstanding a default in payment upon the day specified. The books are full of instances where such relief has been granted, and in many cases where there is an express stipulation of forfeiture. But this relief has always been afforded upon equitable principles. It will by no means be given as a matter of course, but some circumstances must exist to show that the party is justly entitled to it; as, for instance, where the purchaser has gone into possession and made valuable improvements or paid a considerable portion of the pur-

chase money, or the default is occasioned by the act of the vendor, or he has waived it by receiving part of the purchase money, or otherwise, or where any other circumstances exist that would render a forfeiture inequitable. But I have never seen a respectable case, where the contract is wholly executory and the time specific when the purchase money shall be paid, with an express condition of forfeiture if not paid at the time, and where the purchaser has never taken possession or expended anything upon the premises, but waits for several years after the payments are due, and until there is a raise in value, in which he has obtained the relief."

The language just quoted expresses the two extremes to which the decisions go. The county asks us to hold that this case falls in the second category set out by the court, but an examination of the facts, followed by a comparison of the criteria set out in the quotation, indicates that this case is far closer to the tests which lead a court to grant specific performance.

 The above review of the authorities renders it clear that while a suitor's right to the remedy of specific performance is not absolute and that a court may decline to grant it; nevertheless, before a court may take such a course it must examine the contract together with all of the circumstances revealed by the evidence and from the entire situation determine whether the case presents equitable grounds for denying specific performance. If a denial is made it must find its justification in established equitable principles and not in the chancellor's personal views concerning justice. Equitable principles are not always couched in terms as precise and specific as some legal principles, such as the one which governs contributory negligence. Nevertheless, even though the governing equitable principles may be phrased in generic terms

and may be flexible, they must be run down and applied. They and they alone reveal to the chancellor his prerogatives and chart for him his duty. Accordingly, when the law recognizes in a judge discretionary power over the remedy of specific performance it does not thereby invest him with authority to pursue his own instincts, but entrusts him with the function of determining in the light of equitable principles whether the remedy of specific performance will fit the case. Since such is our view of the pertinent judicial duty, it follows that the mere fact that the conduct of a party "does not square" with what in the opinion of the court constitutes a "principle of good sound business" is not a basis for denying specific performance unless some equitable principle demands that the conduct of the seeker for the remedy of specific performance squares with sound business principles. We are aware of no equitable principle of that kind.

In urging that the remedy of specific performance should be withheld from Spaulding the county contends that equity denies that remedy to a defaulting purchaser when time is of the essence of the contract and the market value has increased greatly during the period of default irrespective of any failure by the vendor to give notice of intent to cancel, or where the vendor is a public body dealing with public property. Some of these reasons for denying performance have their basis in the terms of the contract or the status of the county; such reasons are not properly equity considerations alone. When the reasons are analyzed and it is determined that the contract is valid, as we have seen this one is, the only remaining objections which may appeal to the "discretion" of the court are that a substantial default accompanied by an increase in market price will prevent specific

performance. The "delay and increase" doctrine is really no more than a shorthand method of describing a particular application of basic principles, and is most generally applicable to an option contract, which this one is not. In those instances it is deemed "inequitable" to let a purchaser find out "which way the wind blows" before making his choice. Outside of that type of circumstance, the doctrine has no real meaning in and of itself, but must rest on broader ground. These "ultimate" factors must therefore be examined in the light of the basic equitable principles which will allow a court to exercise its "discretion" and refuse specific performance. In this context, these principles must be "laches" and "hardship." Unless these are sufficient grounds for the court to stay its hand, the county can not prevail.

In *Wimer v. Wagner,* 323 Mo 1156, 20 SW2d 650, specific performance was denied because, though the vendor had extended the time for payment, he had been very insistent that the extension dates be complied with. When they were not, he refused to perform his contract and his action was upheld by the court. In *Ewing v. Ryan,* 113 Or 225, 231 P 981, specific performance was denied because the vendor had properly declared a forfeiture under an optional forfeiture clause. In *Fox v. Fridrich,* 96 N J Eq 456, 126 A 535, the vendee told the vendor on the due date that he wouldn't perform, thus repudiating the contract and furnishing grounds for refusal of specific performance. The decision was predicated in part on "laches." In *Buffalo Coal & Coke Co. v. Vance,* 71 W Va 148, 76 SE 177, the court felt that five years without any action on the part of the vendee indicated an abandonment and refused specific performance, particularly since the vendee still couldn't perform his part

of the exchange. These grounds would, most likely, also prevent enforcement at law, but none of them are present in the case at bar.

In the case before us it is difficult to discern any hardship which will be cast upon the county if specific performance is awarded to Spaulding. If that relief is granted, the county will receive no more and no less than it agreed to take as the price for the land. It will be remembered that at the time of the refusal of the tender in 1952 the amount which the county would receive for the land was its primary concern; the reason it gave for refusing the tender was "inadequate consideration." Upon cursory examination it might seem improper to make the county part with land now worth $50,000 for a consideration of $500; but if the county's position is sustained, Spaulding will (1) lose land worth $50,000 for the failure of Fischer to have paid $39 annually and (2) also have lost the opportunity to have purchased substitute land when prices were low. In McClintock, Principles of Equity, 2nd edition, it is pointed out in § 70 that:

> "* * * It must not be overlooked that it is not merely the absolute hardship to defendant that controls, but the balance of that hardship over the injury plaintiff will suffer if the relief is not given.
>
> * * *
>
> "When courts of equity speak of hardship as a ground for refusing specific performance of a contract, they almost always refer to hardship resulting from subsequent change in conditions surrounding the performance. If the hardship inheres in the terms of the contract itself, the courts treat it as a harsh or unfair contract and apply to it the doctrines discussed in the following section. If it inheres in the existence of conditions unknown to the parties, or to one of them, the refusal of relief is generally based on the mistake. Attempts have

been made to classify the kinds of hardship against which equity will relieve, but those attempts have not proved to be very helpful in explaining the results of the cases which have been decided, or in predicting how a future case will be decided. It has been said that the hardship must result from a subsequent event which could not reasonably be foreseen by the parties. * * * The cases which apply the almost uniform rule that subsequent changes in value do not cause such hardship as to defeat the right to specific performance form the greater number of the cases which support the doctrine that a hardship which could have been reasonably anticipated will not defeat relief, but these cases can be sustained on other grounds. In the first place the hardship to one party is exactly balanced by the benefit to the other from the performance and where there is such balance the interest in the enforcement of the contract ought to prevail. Then too, one of the principal purposes of most contracts which are to be performed in the future is to protect the parties against adverse changes in value. Where the contract expressly or impliedly determines where the hardship of a possible future event shall fall, the enforcement of the contract ought not to be refused because of that hardship."

The question as to whether a bad bargain is a "hardship" that will suffice to defeat performance of a contract is considered in *Southern Railway Co. v. Franklin & Pittsylvania Railroad Co.*, 96 Va 693, 32 SE 485, 44 LRA 297, where it is said:

"* * * we question whether a court of equity ever refuses specific performance upon the sole objection of hardship, where the contract, in its inception, was fairly and justly made, and the hardship is the result of miscalculation, or is caused by subsequent events or a change of circumstances, and the party seeking performance is wholly with-

out fault. In *Marble Company v. Ripley,* 10 Wall 356, Mr. Justice Strong, in speaking of contracts that were supposed to be fair and equal when made, but in the lapse of time have become bad bargains, said: 'Besides, it is by no means clear that a court of equity will refuse to decree the specific performance of a contract, fair when it was made, but which has become a hard one by the force of subsequent circumstances and changing events.' The element of risk enters more or less into every contract, and the obligation to perform it cannot be allowed to depend upon the question whether it has proved to be advantageous or disadvantageous. It would be a travesty on justice, and the reputed sanctity of contracts would be of little avail, if parties could refuse the performance of contracts having some years to run, which were fairly entered into, and believed to be just and equal when made, merely because from contingencies, whose possibility might have been foreseen, they had turned out, in the course of execution, to be a losing instead of a profitable bargain."

Williston, Contracts, 2nd edition, 1936, § 1425, has this comment:

"Specific performance may be denied also if the hardship to the defendant * * * will be out of all proportion to the value of the performance to the plaintiff. Appreciation or depreciation in value or other events subsequent to the formation of the contract will not ordinarily afford ground for refusing enforcement by equity even though they make the performance of the two parties unequal. But if the plaintiff was in default or guilty of gross laches, and the value of the property has materially changed, specific performance may be denied, since otherwise a plaintiff might endeavor to take a speculative advantage of the changes in value. * * *"

From the foregoing an impression may be gleaned

that an unexpected turn of events may in some circumstances afford ground for a denial of specific performance. The resulting "hardship" when nothing but money is involved, as in this case, is less difficult than the plight of a purchaser who can not give in exchange the thing bargained for, for example, the title to the land he agreed to convey in exchange for performance by the vendor. When only money is involved the "hardship" of the one is generally balanced by the benefit to the other. In a balance of that kind inequitable speculation by the purchaser, if he was guilty of any, may tip the scales in favor of the vendor and allow him to escape his contract. Similarly, where the time for performance of the agreed exchange has long passed, the purchaser may be accused of laches, but here by the terms of the contract the county was not bound to convey the land until after the "hardship" claimed was an existing fact. Accordingly, this is not a case where the purchaser waited until long after the time for full performance was due and then demanded a deed with the increase coming in the interval between the time he should have asserted his rights and the time when he did so.

Even if specific performance were denied to Spaulding on the ground that it would work a hardship on the county, an award of damages at law would not be less harsh. As pointed out in 32 Mich L R 518, the courts have often failed to take this factor into account in their analysis. Seemingly, the only defense available to the county in an action at law upon this contract would be the statute of limitations; but the period of limitations would possibly be deemed tolled by the suit now under consideration. Further, it will be recalled that the county constantly accepted from Spaulding the tax payments even though it knew that Fischer

had failed to discharge the annual payments. Thereby the county signified that the contract was still in effect and had not been terminated. See Williston on Contracts, 2nd edition, §§ 687 and 688. The measure of damages as set forth in *Neppach v. Oregon & California R. R. Co.*, 46 Or 374, 80 P 482, would be the value of the land agreed to be conveyed at the time of the breach less the amount of the unpaid purchase price. That sum evidently would be $50,000. Accordingly, the remedy at law would seem to be no less harsh than that of specific performance.

We come now to the combination of delay and hardship, for they constitute the basis of the equitable doctrine of laches. The county asks us to hold that Spaulding is barred from relief by (1) failure to have made timely payment of the annual installments and (2) by delay in seeking specific performance while in the meantime speculating, so the county claims, as to whether the contract would turn out to be advantageous. Those contentions involve the "inequitable speculation" doctrine. As pointed out in *McIver v. Norman*, 187 Or 516, 205 P2d 137, 213 P2d 144, delay alone is not sufficient to support a defense of laches. The delay must be prejudicial. We can not perceive how the delay in the case at bar has prejudiced the county, for the latter is asked to do nothing more than it promised when it sold the property. The county has made no better bargain with any third party. Likewise, it has been prevented in no way from getting title to the quarter section, and its title is acceptable to Spaulding. Finally, it has put itself in no disadvantageous position in reliance on any assumption that the defendant would not perform. In fact, the delay of the parties is about equal and the time of the essence provision should apply with equal force to

both of them. The defendant was bound to pay the installments and the county was required to take measures for the forfeiture of the contract when a default occurred unless it was willing to have adverse inferences drawn. *Mays v. Morrell,* 65 Or 558, 132 P 714, indicates that each is, in a sense, in pari delicto because their claims are about equally stale and therefore neither has an advantage over the other in that respect. See also *Wilson v. Wilson,* 41 Or 459, 69 P 923, for a further analysis of when laches will be a bar to relief. *Kelly v. Tracy,* 209 Or 153, 305 P2d 411, points out that "delay in order to amount to laches must be such as works injury to another."

■■■ There is another defect in the position of the county. *Weatherly v. Hochfeld,* 133 Or 136, 286 P 588, and *Baillie v. Columbia Gold Mining Co.,* 86 Or 1, 166 P 965, 167 P 1167, hold that laches is not available as a defense unless pleaded. The reply sets out facts which go primarily to the question of whether the contract was properly canceled, and its only appeal to the equity of the situation consists of allegations that the purchase price was inadequate and that the defendant Fischer was the person who cruised the land for the county. None of these defenses were upheld by the trial court. Certainly a plea of laches requires more than this. An instructive decision is *Thompson v. Colby,* 127 Iowa 234, 103 NW 117, which arose out of a suit for specific performance of a land contract. The latter contained a time of the essence clause and a provision for an optional declaration of forfeiture by the vendor. Of a total price of $3,000, only about $900 had been paid, with some of the payments late and insufficient in amount. No payments had been made on the contract for a period of about seven years and the value of the land had increased greatly in the

year or so before the purchaser tendered the amount due and demanded a deed. It was only after this tender that the vendor gave notice of forfeiture. No consideration was given to the question of laches, since it had not been pleaded as a defense. In fact, the shoe was put on the other foot in a sense when the court stated:

> "* * * Further action was necessary, and, if the vendor did not in fact declare a forfeiture, even though the right to do so existed, the vendee has lost no rights on account of his failure. [Citing cases] While it is conceded that the plaintiff was in default for years, it is also conceded that during the greater part of the time the appellant had declared no forfeiture. The burden of proof is on him to show a forfeiture, and that he was diligent in exercising the right. * * *"

Spaulding, in the case at bar, has pleaded and relied on laches on the part of the county.

Even though the county has not pleaded laches, we will take note of some cases in which the type of delay involved here was before the courts. In *Thompson v. Colby,* from which we just quoted, the delay on the part of the vendee was equal to that in this case. While the court in *Voorhees v. DeMeyer,* 2 Barb 37, held that time was not critical, it granted specific performance twenty-eight years after the date of the contract which was some twenty-three years after the time for the final payment. In *Seaman v. Van Rensselaer,* 10 Barb 81, the court granted specific performance to an assignee of the vendee after an eight year default, though it is true that most of the money had been paid. In *Stewart v. Gates,* 30 Miss 100, apparently nothing had been paid on the contract, but the court granted specific performance after a default of four years. Two Illinois cases are instructive. In *Peck v. The*

*Brighton Co.,* 69 Ill 200, an assignee of the vendee was given specific performance under a contract with a time of the essence clause and a provision for optional forfeiture. Acquiescence of the vendor was established by evidence which showed that he accepted late payments and let the defaults slip by. Of the purchase price of $3375 only $875 had been paid, and at the time of the suit, some fourteen years after the last payment had been made, the balance due was $5343. Despite this substantial default over a long period of time, the court granted relief even though the vendee's assignee did not make a tender of the purchase money until the vendor had given notice of forfeiture. In the later case of *Allen v. Woodruff,* 96 Ill 11, another assignee of a vendee asked for and received specific performance after a default of six years when over $500 (including interest) was due on a contract for $700. Improvements had been made on the property, but no emphasis was placed on that fact by the court. The contract contained a time of the essence clause. In granting relief the court said:

"* * * But whatever his private purposes may have been [for forbearing], it is an unquestioned fact that, prior to the time defendants in error made the tender of the balance due from Allen to Sumner on the contract, the latter had never declared or attempted to declare a forfeiture of the contract, or otherwise attempted to question Allen's rights under it. * * *"

Finally, to relate the problem of delay back to the problem of increase in the value of the land which is claimed to result in "hardship," we turn to *Rausch v. Hanson,* 26 S D 273, 128 NW 611, where the plaintiff had paid only $130 of a price of $1750 under a contract with an optional forfeiture provision, and had been in default for about four or five years. The land had in-

creased in value and, while there were also elements of misfortune in the vendee's favor, the court commented:

"The fact that the land increased in value is not a controlling circumstance. It would be as reasonable to infer that the defendant would now be demanding enforcement of the contract if the value of the land had not increased as it is to infer that the deceased [plaintiff] would not have sought enforcement unless its value had increased. * * * the contract having been fair and reasonable when made, the price of the land fixed by the contract having been its full value, the subsequent increase in its value is not in itself a sufficient reason for denying specific performance."

Thus, it is seen that the length of the default-delay in this case, though admittedly long, is not patently unreasonable if there is some justification for it. As indicated in the above decisions, a delay of this length, while approaching the borders of what would bar the intervention of equity, is only one factor in the exercise of the "discretion" of the court. It remains for us to examine the case in this light to see if the delay (1) can be excused, (2) has been "waived" by the plaintiff, or (3) whether the county has precluded itself from asserting that the default should bar specific performance.

The plaintiff's brief calls attention to the annotation in 11 ALR2d 390, entitled "Change of conditions after execution of contract or option for sale of real property as affecting right to specific performance." The plaintiff (county) contends that this annotation establishes the rule that:

"* * * such an increase, taken together with delay or default on the part of the plaintiff, may

justify equity in refusing to interfere to aid the purchaser."

The annotation also gives the corollary rule that:

"Where the delay accompanying an increase in the value of the land contracted for has been acquiesced in by the defendant vendor, it has generally been held that such an increase presents no ground for the denial of specific performance."

We construe the passage last quoted to mean that if a vendor allowed a vendee to continue to be delinquent in his payments and took no steps to terminate the contract as permitted by the latter's terms but, on the other hand, continued to accept benefits under it, he is in no position to insist that a failure to comply with the contract ended the rights of the purchaser. While often denominated "waiver" in the cases, perhaps because of the frequent occurrence of "time of the essence" clauses, the principle of law employed is actually more in the nature of an estoppel. That is, if the acts of the vendor have lulled the vendee into inaction and default he can not take advantage of this inattention to duties on the part of the purchaser. See *Mitchell v. Hughes,* 80 Or 574, 157 P 965, and annotations in 107 ALR 345 entitled "Waiver of, or estoppel to assert, or election not to assert, forfeiture of executory land contract because of default in payment."

██ ██ In viewing the conduct of the county that enters into such an estoppel, the fact that some of the acts that must be considered were those of the tax collector constitutes no objection. A tax collector generally has no power to affect the title to land owned by the county. It is a familiar rule that a principal is bound by the acts of his agents acting within the scope of their authority; and it seems from *Glen Cullen Realty*

*Co. v. Multnomah County,* supra, and *Feehely v. Rogers,* supra, that this rule applies to the county when acting in matters such as those now before us as well as it does to private parties. In addition, the county judge clearly has the power to convey county land, and it was through his failure to direct the tax collector to remove Spaulding from the tax rolls that both Fischer and Spaulding were misled. Thus, not only the acceptance of the tax payments but also the lax treatment accorded Fischer in meeting his obligations may be attributed directly to the county officers who have the power to affect the title to the county's lands.

Most of the cases in which the question has arisen as to what acts of a vendor are sufficient to create such a "waiver" or "estoppel" involve a vendee who is attempting to obtain a return of his purchase money payments when he has been in default and no longer wishes to continue the contract. An Oregon case of this type is *Graham v. Merchant,* 43 Or 294, 72 P 1088, where the vendor waived the time of the essence clause by accepting late payments and the vendee was allowed to recover the money paid because no forfeiture had been declared. *Johnson v. Feskens,* 146 Or 657, 31 P2d 667, and *Johnson v. Berns,* 111 Or 165, 209 P 94, 224 P 624, 225 P 727, involved similar holdings. In *Rynhart v. Welch,* 156 Or 48, 65 P2d 1420, the return of the money was denied because the vendor had cured any waiver by giving a proper notice of forfeiture. *Maffet v. Oregon & California Railroad Co.,* 46 Or 443, 80 P 489, recognized that a vendor could waive a default by "unequivocal acts or demeanor affording reasonable and proper inducement for the purchasers in reliance thereon to alter their course as to strict punctual compliance."

We will pause no further upon that facet of the problem before us except to observe that it seems reasonable to believe that a vendee who is willing to perform is in a better position to ask the aid of equity than one who is trying to escape the obligations of his contract. For instance, in *Barkis v. Scott,* 34 Cal2d 116, 208 P2d 367, the court said:

> "A vendee in default who is seeking to keep the ·contract alive, however, is in a better position to secure relief than one who is seeking to recover back the excess of what he has paid over the amount necessary to give the vendor the benefit of his bargain after performance under the contract has terminated. \* \* \*"

We took note of the foregoing decisions in restitution cases because specific performance and restitution in cases of this character are governed by the same general rule.

The usual act of the vendor which will serve to "waive," "excuse" or "estop" him from asserting a delay is acceptance of late payments or postponement of the time specified in the contract. The typical situation in which this occurs is, of course, that of a vendor and a vendee dealing with the purchase of a single piece of property under a single contract. The gravamen of the idea is that the conduct of the vendor in such a case causes the vendee to take a certain course of action with relation to that contract. We see no distinguishing factor in the case before us, for while the acts of acceptance of late payments were made in connection with different contracts, they set up a pattern which involved the entire transactions between the parties with respect to the matter of payments. There were no distinguishing factors to set this particular piece of property apart in the minds of either of the

parties and the confusion is made readily apparent by the statement of the defendant Fischer that he thought that he had paid some of the installments on this property. There is no indication that the county officials ever communicated to either Fischer or Spaulding any intent to insist upon strict compliance with the payment dates, and, in fact, all their dealings pointed to the contrary. It must be remembered that all of these contracts were made on the same form with the same provisions. Surely the indiscriminate treatment of most of the contracts would reasonably be expected to influence Fischer with respect to all of them unless a different intent with respect to some of them was called to his attention. It is true that the county attempted to do so, but did not succeed at first; and as soon as the defendants learned that the county wanted its money, it was immediately tendered.

*Mo v. Bettner,* 68 Minn 179, 70 NW 1076, enforced an installment land contract by allowing the vendee's assignee time to pay up in the face of arguments by the vendor's counsel that any unexcused default will defeat specific performance. The court stated that "a vendor cannot use his own indulgence as a trap." In *Arnot v. Union Salt Co.,* 186 N Y 501, 79 NE 719, which involved a default on a bond, the court set out the general rule as follows:

"* * * Where a party entitled to enforce payment under a contract has consented to postpone the time of such payment, and the other party has acted upon such consent and in reliance thereon has permitted the contract time to pass without payment, the creditor may not treat the failure to pay within the time originally specified as a breach of the contract. * * *"

*Boone v. Templeman,* 158 Cal 290, 110 P 947, involved a contract with a time of the essence clause and a provision for optional forfeiture. Several tardy payments were accepted; and when the vendor gave a notice purporting to rescind some three years after the last payment had been made, the vendee offered to pay all that was due. The court, in commenting on the vendor's failure to have taken any steps until after all of the payments were due, stated:

> "* * * He could not, at that time, put Boone in default as to any of the payments so as to work a forfeiture, without tendering a conveyance of the land. Until Boone was in default there was no right of forfeiture."

■ While the court expressed its reasoning in terms of no "default," the basis of the decision was clearly that the delay had been waived by the acceptance of overdue payments. This court has likewise recognized that acceptance of late payments will destroy objections to a default. *Grider v. Turnbow,* supra.

In *Gray v. Pelton,* 67 Or 239, 135 P 755, specific performance was granted to the assignee of the vendee after the vendor had accepted late partial payments and told the vendee he could pay the balance at his convenience. The contract contained a time of the essence clause and a provision for automatic forfeiture—the land had increased in value. The court quoted with approval from *Boone v. Templeman,* supra, as follows:

> "* * * 'Although time be made of the essence of the contract, yet the condition may be waived, just as in an ordinary case; but, if the purchase money is to be paid by installments, each breach in nonpayment is a new breach of the agreement, and gives to the seller a right to rescind the contract, but that right should be asserted the moment the breach occurs.' * * *."

The court held that such a forfeiture provision upon a mere default usually entails a forfeiture by its sheer force "unless the vendor waives the default or subsequent forfeiture, which he has a right to do. This he may do by an express agreement to that effect, or by unequivocal acts or demeanor affording reasonable and proper inducement for the purchaser in reliance thereon to alter his course as to strict and punctual compliance, either in advance of or after the prescribed time. The stipulation that time shall be of the essence of the contract is made solely for the benefit of the vendor. The conduct of such vendor will operate as a waiver when it is consistent only with a purpose on his part to regard the contract as still subsisting." An optional forfeiture provision such as in the case before us does not have the above effect.

In fact, as intimated in the Gray case, the vendor must be vigilant in enforcing his rights. While *Singer v. Hoffman Cake Co.,* 281 Mich 371, 275 NW 177, holds that mere forbearance to sue for late payments is not a waiver; a notice of intent to forfeit and a notice of forfeiture had been given, and, in fact, the vendee could not pay. *Pier v. Lee,* 14 S D 600, 86 NW 642, on the other hand, allowed specific performance on a cross-claim presented in opposition to a suit to clear title under a contract which made time of the essence and provided for an optional forfeiture without notice. Some seven years before the suit was brought the defendant had defaulted, but the plaintiff had waited three months before declaring a forfeiture, and another month before bringing a detainer action. It was only after the institution of the detainer action that the vendee tendered the amount due. In granting specific performance, the court held that the time of the essence clause was binding on both parties and that

the delay involved in declaring the forfeiture deprived the vendor of power to effect a forfeiture for the past default. The rationale of the decision was that any other rule would allow a vendor to continue the contract until he determined whether it would be to his advantage to declare a forfeiture, thus holding the vendee at his mercy. In *Cue v. Johnson,* 73 Kan 558, 85 P 598, the vendor asked the court to cancel the contract after the purchaser had paid $1,322.03 of a total purchase price of $5,005.10. The delay in declaring the forfeiture had been about a week, but the court refused to cancel the contract, stating:

> "It seems to be a well-established rule in such cases that the party claiming the benefit of a forfeiture must show himself to be strictly within terms of the instrument which confers that right. He must act promptly in asserting his claim, and his acts relating thereto must be positive, unequivocal, and inconsistent with the continuance of the contract. * * *"

See also *Cughan v. Larson,* 13 N D 373, 100 NW 1088.

■ In this case, the county waited for well over a year after the first installment was due and about a month and a half after the second was due before attempting to declare a forfeiture. Even if its delay should not be thought sufficient to invoke against the county the time of the essence clause, on which it so strongly relies, the fact remains that the assertion of its rights was never communicated to the defendants, but instead, they were lulled into further security by the county's continued receipt of the taxes which Spaulding paid. It may be inferred that the county was trying to take advantage of the rise in the value of the land before declaring a forfeiture. This inference possibly is borne out by its expressed reason for the rejection

of the tender, that is, that it was "inadequate consideration." Presumably, if Spaulding had offered a larger sum, to which the county was not entitled under the contract, it might have been willing to convey the land. It is not necessary for us to determine in this case the amount of delay which will preclude a party from asserting its rights under an optional forfeiture provision, for delay is only one element of the total conduct of the county. Any rule which ignores such delay, however, suffices to allow a vendor to engage in the same type of speculation which the county seeks to ascribe to the defendants and then condemns.

Looking at the relations of the parties in their entirety, it should be clear that the county is now precluded from insisting on performance according to the terms of the contract as a condition precedent to the rights of the defendants to have their agreed exchange. As far as we can see, there is no settled equitable principle which stands in the way of the relief requested by the defendants. In this sense, there is nothing to appeal to the "discretion" of the court to afford a reason for denying specific performance. The failure to observe a "principle of good sound business," unless that principle happens to be an ethical one which has an equitable counterpart, does not warrant the disposition of this case which was made by the trial court.

The decree ordering specific performance should, of course, make some provision for the payment of taxes accruing after 1954.

Reversed and remanded.