## PROUD TRUCK SALES, INC. *v.*
## DEPARTMENT OF REVENUE

Orval N. Thompson, Weatherford, Thompson, Horton & Jordan, Albany, represented plaintiff.

G. F. Bartz, Assistant Attorney General, Salem, represented defendant.

Decision part for plaintiff, part for defendant, rendered November 15, 1971.

CARLISLE B. ROBERTS, Judge.

This is an appeal from the Department of Revenue's Order No. VL 70-312, dated August 12, 1970,

denying plaintiff's request for cancellation of Linn County's personal property assessment of certain motor vehicles and trailers held in plaintiff's inventory on January 1, 1970.

ORS 481.270 (2) provides that:

> "(2) Old or new vehicles * * * not registered and licensed under this chapter on January 1 of any year, which are being held in stock by the owner or dealer for sale or exchange, shall be reported to the county assessor by the owner and listed for ad valorem taxation but the assessor shall cancel such listing with respect to all such vehicles * * * upon being furnished documentary proof, not later than the date specified in subsection (4) of ORS 308.250 [May 15], that the vehicles so assessed have been registered in this state and the license fees have been paid thereon not later than March 31 of the same year."

The plaintiff was a licensed dealer who on January 1, 1970, was the owner of motor vehicles subject to exemption if the requirements of ORS 481.270 were followed. The secretary-treasurer of the plaintiff corporation, beginning in 1954, was a licensed public accountant, regularly engaged in the operation of his own office. It was his duty to prepare and file the necessary returns required by the statute. The court finds that the original personal property return, listing all the vehicles on hand as of January 1, 1970, was filed in the office of the assessor on March 31, 1970. In February 1970, the plaintiff sold its assets and business name to Oregon White Truck Sales, the plaintiff retaining an inventory of used trucks and trailers which it agreed not to sell in the State of Oregon. On or before March 31, 1970, 54 units, unlicensed, were transferred to plaintiff's sales outlet in Tacoma,

Washington. One unit, with an Oregon license, was also transferred to Tacoma. Eleven other units had been licensed in Oregon. There is no dispute but that the plaintiff's secretary-treasurer prepared a supplemental return for delivery to the assessor's office, pursuant to subsection (2) of ORS 481.270. This supplemental return shows each of the inventoried units either had been licensed or "transferred to Tacoma before 3-31."

Two issues are presented to the court: (1) Whether there was a timely mailing by the plaintiff and receipt by the assessor of the supplemental return; and (2) whether cancellation of the personal property assessment could be made by the assessor for those units "transferred to Tacoma before 3-31."

With respect to the first issue, the testimony offered on behalf of the plaintiff showed that the corporate secretary-treasurer, operating as an independent licensed public accountant, maintained a daily log, showing whether clients' completed tax returns had been picked up or mailed. Plaintiff's Exhibit 5 contains the entry: "5-8 Oregon Truck Sales Mailed Supp. Pers. Prop." The accountant's chief secretary, who has worked for him for seven years, testified that this entry had been made in her handwriting, that she does all of the mailing from the office and that she took this particular item to the United States Post Office's drive-in box, in Albany, at 5 p.m. on May 8, 1970. A second witness, a secretary newly employed by the accountant, testified that on May 8 she was being instructed in the mail routine of the accountant's office and remembered the entry on the log and the preparation for mailing the supplemental report. However, so far as can be ascertained, the report was never received by the assessor's office and, shortly after

the due date (May 15), Mr. Tom Bayless of the assessor's office gratuitously telephoned to the accountant to inform him that there was no evidence in the office of the receipt of a supplemental report, whereupon the accountant prepared a copy of the duplicate original which he had kept on file and delivered it to the assessor's office.

■ The court, having seen the witnesses and heard their testimony, concludes that the supplemental returns were deposited in the U.S. mail on May 8, 1970. ORS 305.820 provides:

"(1) Any writing or remittance required by law to be filed with or made to the Department of Revenue, county board of equalization, county assessor or tax collector (designated in this section as the 'addressee') which is:

"* * * * * *

"(b) Lost in transmission through the United States mail, shall be deemed filed and received on the date it was mailed if the sender:

"(A) Can establish by competent evidence satisfactory to the addressee that the writing or remittance was deposited on or before the due date for filing in the United States mail and addressed correctly to the addressee; and

"(B) Files with the addressee a duplicate of the lost writing or remittance within 30 days after written notification is given by the addressee of its failure to receive such writing or remittance.

"* * * * * *"

The plaintiff waived its right to a written notification, but the court finds that the requirements of the statute have been met and that, as a matter of law, the supplemental return was received by the assessor on May 8, 1970, a timely filing.

With respect to the second issue, the accountant testified that, as a licensed accountant, he was accustomed to utilizing the provisions of ORS 308.250 on behalf of certain clients to obtain cancellation of assessment of grass seed shipped out of the state before May 1 of the year of assessment, required proof being furnished to the assessor on or before May 15 of the year of assessment. This suggested to him a parallel to the shipment of plaintiff's unlicensed motor vehicles outside the state pursuant to contract. Accordingly, in February he telephoned to the personal property tax division of the Linn County Assessor's Office and asked an unidentified female employee whether trucks and trailers which would be exempt if licensed on or before March 31 would be exempt if, unlicensed, they were removed from the state on or before March 31? The accountant testified that the unknown person answering the telephone appeared to make inquiry of someone else and then gave an affirmative answer to him. He relied upon this advice and indicated in the supplemental returns the removal of the vehicles from Oregon.

The plaintiff's witness testified that, relying upon this telephoned information, he did not follow the usual practice of having plaintiff's vehicles licensed prior to March 31, which would have entitled plaintiff to an exemption but, instead, removed the unlicensed vehicles from the State of Oregon to the State of Washington prior to March 31. Plaintiff argues that all the elements of equitable estoppel are present and that the Linn County Assessor is estopped from entering the personal property upon the assessment roll and that no tax can be collected thereon.

Oregon's case law reflects the judiciary's concern for the misled citizen. While there has always been a

strong public policy against invoking the doctrine of estoppel against the state (including county government), its availability has been recognized in *Johnson v. Tax Commission,* 248 Or 460, 435 P2d 302 (1967), *Belton v. Buesing,* 240 Or 399, 402 P2d 98 (1965), *Boyle v. City of Bend,* 234 Or 91, 380 P2d 625 (1963), and *County of Lincoln v. Fischer et al,* 216 Or 421, 339 P2d 1084 (1959). The five necessary elements of equitable estoppel are listed in *Donahoe v. Eugene Planing Mill,* 252 Or 543, 450 P2d 762 (1969), and *Earls et ux v. Clarke et al,* 223 Or 527, 355 P2d 213 (1960). However, the doctrine of equitable estoppel is rarely applicable against a taxing body. "* * * The policy of efficient and effective tax collection makes the doctrine of rare application. * * *." *Johnson v. Tax Commission, supra,* 463. See also Anno, 1 ALR2d 338, 344.

■ The application of the doctrine cannot be sanctioned by the court in this case. There is no precedent for allowing the doctrine to be invoked against a governmental unit on the basis of an oral communication over the telephone by an unknown person allegedly associated with the governmental body. As stated by Newman, *Reliability of Official Advice,* 53 Col L Rev 374, 379 (1953).

"There are many reasons for requiring that a person relying on official advice point to more than a telephone call, an office conference or a speech. The chances of faulty memory are too great, the difficulties of proof even greater. In a few regrettable cases people will be penalized for a hesitancy to request written confirmation, but this fact hardly offsets the dangers of sanctifying oral statements." [See citations in author's footnotes.]

See also *Pilgrim Turkey Packers v. Dept. of Rev.,* 4 OTR 498 (1971).

■ Note must be taken that, in addition to failure to use methods to obtain information meriting reasonable reliance, the plaintiff is seeking to obtain through estoppel an exemption which would have had to be denied by the assessor in any event. ORS 481.270 (2), allowing an exemption where Oregon license plates have been obtained for the motor vehicle, is not *in pari materia* with the "processor's law" which provides an exemption under ORS 308.250 for certain agricultural products which have been shipped from one point to another. One cannot obtain through estoppel a tax exemption not provided by statute. Even if it is assumed that an employee of the assessor advised the officer, the assessor cannot delegate to any employee power he himself does not possess to grant an exemption.

The plaintiff is entitled to an exemption for those motor vehicles which were licensed by Oregon on or before March 31, 1970, and no others.